# CAREY, WARDEN *v.* SAFFOLD

No. 01–301.   Argued February 27, 2002—Decided June 17, 2002

Breyer, J., delivered the opinion of the Court, in which Stevens, O'Connor, Souter, and Ginsburg, JJ., joined. Kennedy, J., filed a dissenting opinion, in which Rehnquist, C. J., and Scalia and Thomas, JJ., joined, *post*, p. 227.

*Stanley A. Cross*, Supervising Deputy Attorney General of California, argued the cause for petitioner. With him on the brief were *Bill Lockyer*, Attorney General, *Robert R. Anderson*, Chief Assistant Attorney General, and *Jo Graves* and *Arnold O. Overoye*, Senior Assistant Attorneys General.

*David W. Ogden* argued the cause for respondent. With him on the brief were *Mary Katherine McComb*, by appointment of the Court, 534 U. S. 1053, and *Seth P. Waxman.**

Justice Breyer delivered the opinion of the Court.

The federal Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking a federal habeas corpus remedy to file his federal petition within one year after his state conviction has become "final." 28 U. S. C. §2244(d)(1)(A). The statute adds, however, that the 1-year period does not include the time during which an

---

*Briefs of *amici curiae* urging reversal were filed for the State of North Carolina et al. by *Roy A. Cooper III*, Attorney General of North Carolina, *Amy C. Kunstling*, Assistant Attorney General, and *Dan Schweitzer*, and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Janet Napolitano* of Arizona, *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Earl I. Anzai* of Hawaii, *James E. Ryan* of Illinois, *Carla J. Stovall* of Kansas, *J. Joseph Curran, Jr.*, of Maryland, *Thomas F. Reilly* of Massachusetts, *Jeremiah W. (Jay) Nixon* of Missouri, *Mike McGrath* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *John J. Farmer, Jr.*, of New Jersey, *Betty D. Montgomery* of Ohio, *Hardy Myers* of Oregon, *D. Michael Fisher* of Pennsylvania, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *Randolph A. Beales* of Virginia, *Christine O. Gregoire* of Washington, and *Hoke MacMillan* of Wyoming; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger*.

*David M. Porter* and *Peter Goldberger* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging affirmance.

application for state collateral review is "pending" in the state courts. § 2244(d)(2).

This case raises three questions related to the statutory word "pending":

(1) Does that word cover the time between a lower state court's decision and the filing of a notice of appeal to a higher state court?

(2) If so, does it apply similarly to California's unique state collateral review system—a system that does not involve a notice of appeal, but rather the filing (within a reasonable time) of a further original state habeas petition in a higher court?

(3) If so, was the petition at issue here (filed in the California Supreme Court 4½ months after the lower state court reached its decision) pending during that period, or was it no longer pending because it failed to comply with state timeliness rules?

We answer the first two questions affirmatively, while remanding the case to the Court of Appeals for its further consideration of the third.

I

In 1990 Tony Saffold, the respondent, was convicted and sentenced in California state court for murder, assault with a firearm, and robbery. His conviction became final on direct review in April 1992. Because Saffold's conviction became final before AEDPA took effect, the federal limitations period began running on AEDPA's effective date, April 24, 1996, giving Saffold one year from that date (in the absence of tolling) to file a federal habeas petition.

A week before the federal deadline, Saffold filed a *state* habeas petition in the state trial court. The state trial court denied the petition. Five days later Saffold filed a further petition in the State Court of Appeal. That court denied his petition. And 4½ months later Saffold filed a further petition in the California Supreme Court. That court also denied Saffold's petition, stating in a single sentence that it did

so "on the merits and for lack of diligence." App. G to Pet. for Cert. 1.

Approximately one week later, in early June 1998, Saffold filed a petition for habeas corpus in the Federal District Court. The District Court noted that AEDPA required Saffold to have filed his petition by April 24, 1997. It recognized that the statute gave Saffold extra time by tolling its limitations period while Saffold's application for state collateral review was "pending" in the state courts. But the District Court decided that Saffold's petition was "pending" only while the state courts were actively considering it, and that period did not include the intervals between the time a lower state court had denied Saffold's petition and the time he had filed a further petition in a higher state court. In Saffold's case those intervals amounted to five days (between the trial court and intermediate court) plus 4½ months (between the intermediate court and Supreme Court), and those intervals made a critical difference. Without counting the intervals as part of the time Saffold's application for state collateral review was "pending," the tolling period was not long enough to make Saffold's federal habeas petition timely. Hence the District Court dismissed the petition.

The Ninth Circuit reversed. It included in the "pending" period, and hence in the tolling period, the intervals between what was, in effect, consideration of a petition by a lower state court and further consideration by a higher state court—at least assuming a petitioner's request for that further higher court consideration was timely. *Saffold* v. *Newland*, 250 F. 3d 1262, 1266 (2001). It added that Saffold's petition to the California Supreme Court was timely despite the 4½ months that had elapsed since the California Court of Appeal decision. That is because the California Supreme Court had denied Saffold's petition, not only because of "lack of diligence" but also "on the merits," a circumstance that showed the California Supreme Court had "applied its untimeliness bar only after considering to some degree the

underlying federal constitutional questions raised." *Id.,* at 1267.

We granted certiorari. We now vacate the judgment and remand the case.

## II

In most States, relevant state law sets forth some version of the following collateral review procedures. First, the prisoner files a petition in a state court of first instance, typically a trial court. Second, a petitioner seeking to appeal from the trial court's judgment must file a notice of appeal within, say, 30 or 45 days after entry of the trial court's judgment. See, *e. g.,* Ala. Rule App. Proc. 4 (2001); Colo. App. Rule 4(b)(1) (2001); Ky. Rule Crim. Proc. 12.04(3) (2002). Third, a petitioner seeking further review of an appellate court's judgment must file a further notice of appeal to the state supreme court (or seek that court's discretionary review) within a short period of time, say, 20 or 30 days, after entry of the court of appeals judgment. See, *e. g.,* Ala. Rule App. Proc. 5 (2001); Colo. Rev. Stat. § 13–4–108 (2001); Conn. Rule App. Proc. 80–1 (2002); Ky. Rule Civ. Proc. 76.20(2)(b) (2002). California argues here for a "uniform national rule" to the effect that an application for state collateral review is not "pending" in the state courts during the interval between a lower court's entry of judgment and the timely filing of a notice of appeal (or petition for review) in the next court. Brief for Petitioner 36. Its rationale is that, during this period of time, the petition is not under court consideration.

California's reading of the word "pending," however, is not consistent with that word's ordinary meaning. The dictionary defines "pending" (when used as an adjective) as "in continuance" or "not yet decided." Webster's Third New International Dictionary 1669 (1993). It similarly defines the term (when used as a preposition) as "through the period of continuance . . . of," "until the . . . completion of." *Ibid.* That definition, applied in the present context, means that an application is pending as long as the ordinary state collateral

review process is "in continuance"—*i. e.*, "until the completion of" that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains "pending."

California's reading would also produce a serious statutory anomaly. A federal habeas petitioner must exhaust state remedies before he can obtain federal habeas relief. The statute makes clear that a federal petitioner has not exhausted those remedies as long as he maintains "the right under the law of the State to raise" in that State, "by any available procedure, the question presented." 28 U. S. C. § 2254(c). We have interpreted this latter provision to require the federal habeas petitioner to "invok[e] one complete round of the State's established appellate review process." *O'Sullivan* v. *Boerckel,* 526 U. S. 838, 845 (1999). The exhaustion requirement serves AEDPA's goal of promoting "comity, finality, and federalism," *Williams* v. *Taylor,* 529 U. S. 420, 436 (2000), by giving state courts "the first opportunity to review [the] claim," and to "correct" any "constitutional violation in the first instance." *Boerckel, supra,* at 844–845. And AEDPA's limitations period—with its accompanying tolling provision—ensures the achievement of this goal because it "promotes the exhaustion of state remedies while respecting the interest in the finality of state court judgments." *Duncan* v. *Walker,* 533 U. S. 167, 178 (2001). California's interpretation violates these principles by encouraging state prisoners to file federal habeas petitions *before* the State completes a full round of collateral review. This would lead to great uncertainty in the federal courts, requiring them to contend with habeas petitions that are in one sense unlawful (because the claims have not been exhausted) but in another sense *required* by law (because they would otherwise be barred by the 1-year statute of limitations).

It is therefore not surprising that no circuit court has interpreted the word "pending" in the manner proposed by

California. Every Court of Appeals to consider the argument has rejected it. *Melancon* v. *Kaylo*, 259 F. 3d 401, 406 (CA5 2001); *Payton* v. *Brigano*, 256 F. 3d 405, 408 (CA6 2001); *Hizbullahankhamon* v. *Walker*, 255 F. 3d 65, 72 (CA2 2001); *Nyland* v. *Moore*, 216 F. 3d 1264, 1267 (CA11 2000); *Swartz* v. *Meyers*, 204 F. 3d 417, 421–422 (CA3 2000); *Taylor* v. *Lee*, 186 F. 3d 557, 560–561 (CA4 1999); *Nino* v. *Galaza*, 183 F. 3d 1003, 1005 (CA9 1999); *Barnett* v. *LeMaster*, 167 F. 3d 1321, 1323 (CA10 1999). Like these courts, we answer the first question in the affirmative.

## III

Having answered the necessarily predicate question of how the tolling provision ordinarily treats applications for state collateral review in typical "appeal" States, we turn to the question whether this rule applies in California. California's collateral review system differs from that of other States in that it does not require, technically speaking, appellate review of a lower court determination. Instead it contemplates that a prisoner will file a new "original" habeas petition. And it determines the timeliness of each filing according to a "reasonableness" standard. These differences, it is argued, require treating California differently from "appeal" States, in particular by not counting a petition as "pending" during the interval between a lower court's determination and filing of another petition in a higher court. See, *e. g.*, Brief for Criminal Justice Legal Foundation as *Amicus Curiae* 5–18.

California's "original writ" system, however, is not as special in practice as its terminology might suggest. As interpreted by the courts, California's habeas rules lead a prisoner ordinarily to file a petition in a lower court first. *In re Ramirez*, 89 Cal. App. 4th 1312, 1316, 108 Cal. Rptr. 2d 229, 232 (2001) (appellate court "has discretion to refuse to issue the writ . . . on the ground that application has not [first] been made . . . in a lower court"); *Harris* v. *Superior Court*

*of Cal.*, 500 F. 2d 1124, 1126 (CA9 1974) (same); 6 B. Witkin & N. Epstein, California Criminal Law § 20, p. 540 (3d ed. 2000) (describing general policy that reviewing court will require application to have been made first in lower court). And a prisoner who files a subsequent and similar petition in another lower court (say, another trial court) will likely find consideration of that petition barred as successive. See, *e. g., In re Clark*, 5 Cal. 4th 750, 767–771, 855 P. 2d 729, 740–744 (1993). At the same time, a prisoner who files that same petition in a higher, reviewing court will find that he can obtain the basic appellate review that he seeks, even though it is dubbed an "original" petition. See *In re Resendiz*, 25 Cal. 4th 230, 250, 19 P. 3d 1171, 1184 (2001) (reviewing court grants substantial deference to lower court's factual findings). Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court—just as occurred in this case.

The upshot is that California's collateral review process functions very much like that of other States, but for the fact that its timeliness rule is indeterminate. Other States (with the exception of North Carolina, see *Allen* v. *Mitchell*, 276 F. 3d 183, 186 (CA4 2001)), specify precise time limits, such as 30 or 45 days, within which an appeal must be taken, while California applies a general "reasonableness" standard. Still, we do not see how that feature of California law could make a critical difference. As mentioned, AEDPA's tolling rule is designed to protect the principles of "comity, finality, and federalism," by promoting "the exhaustion of state remedies while respecting the interest in the finality of state court judgments." *Duncan, supra*, at 178 (internal quotation marks omitted). It modifies the 1-year filing rule (a rule that prevents prisoners from delaying their federal filing) in order to give States the opportunity to complete one full round of review, free of federal interference. Inclusion of California's "reasonableness" periods carries out that purpose in the same way, and to the same degree, as does inclu-

sion of the more specific appellate filing periods prevalent in other States. And exclusion of those periods in California would undermine AEDPA's statutory goals just as it would in those States. See Part II, *supra*.

The fact that California's timeliness standard is general rather than precise may make it more difficult for federal courts to determine just when a review application (*i. e.*, a filing in a higher court) comes too late. But it is the State's interests that the tolling provision seeks to protect, and the State, through its supreme court decisions or legislation, can explicate timing requirements more precisely should that prove necessary.

Ordinarily, for purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions, rather than the particular name that it bears. See *Richfield Oil Corp.* v. *State Bd. of Equalization*, 329 U. S. 69, 72 (1946) (looking to function rather than "designation" that state law gives a state-court judgment for purposes of determining federal jurisdiction); *Department of Banking of Neb.* v. *Pink*, 317 U. S. 264, 268 (1942) *(per curiam)* (same). We find that California's system functions in ways sufficiently like other state systems of collateral review to bring intervals between a lower court decision and a filing of a new petition in a higher court within the scope of the statutory word "pending."

The dissent contends that this application of the federal tolling provision to California's "original writ" system "will disrupt the sound operation of the federal limitations period in at least 36 States." *Post*, at 227 (opinion of KENNEDY, J.). This is so, the dissent believes, because the prisoner is given two choices when his petition has been denied by the intermediate court: He can file a "petition for hearing" in the supreme court within 10 days, or he can file a "new petition" in the supreme court. *In re Reed*, 33 Cal. 3d 914, 918, and n. 2, 663 P. 2d 216, 217, and n. 2 (1983). Why is California different, the dissent asks, from "appeal" States that *also*

give their supreme courts the power to entertain original habeas petitions? Won't our interpretation of the federal tolling rule, as it applies to California, apply equally to those other States, meaning that even after the statutory time to *appeal* to the supreme court has expired, the federal limitations period may still be tolled because a prisoner might, at any time, file an original petition?

The answer to this question is "no." In "appeal" systems, the original writ plays a different role. As the Supreme Court of Idaho (one of the States cited by the dissent) explains:

> "The Supreme Court, having jurisdiction to *review on appeal* decisions of the district courts in habeas corpus proceedings . . . will not exercise its power . . . to grant an *original* writ of habeas corpus, except in *extraordinary cases*." *In re Barlow,* 48 Idaho 309, 282 P. 380 (1929).

See also, *e. g., Commonwealth* v. *Salzinger,* 406 Pa. 268, 269, 177 A. 2d 619, 620 (1962) ("extraordinary circumstances" required for exercise of original jurisdiction); *La Belle* v. *Hancock,* 99 N. H. 254, 255, 108 A. 2d 545 (1954) *(per curiam)* ("original authority" to grant habeas relief "not ordinarily exercised"); *Ex parte Lambert,* 37 Tex. Crim. 435, 436, 36 S. W. 81, 82 (1896) ("[E]xcept in extraordinary cases, we will not entertain jurisdiction as a court to grant original writs of habeas corpus").

California, in contrast, has engrained original writs—both at the appellate level and in the supreme court—into its normal collateral review process. As we have explained, and as the dissent recognizes, the only avenue for a prisoner to challenge the denial of his application in the superior court is to file a "new petition" in the appellate court. And to challenge an appellate court denial, *"[f]urther review* [of a habeas application] may be sought in [the supreme] court

*either* by a new petition for habeas corpus or, preferably, by a petition for hearing." *In re Reed, supra,* at 918, n. 2, 663 P. 2d, at 216, n. 2 (emphasis added). Unlike States such as, say, Idaho, see *In re Barlow, supra,* the original writ in California is not "extraordinary"—it is *interchangeable* with the petition for hearing, with neither option bringing adverse consequences to the petitioner. Consequently, we treat California both as *similar* to other States (in that its "original writ" system functions like the "appeal" systems of those other States), and *differently* from other States (in that the rule we apply to original writs in California does not apply to original writs in other States, precisely because original writs in California function like appeals). And of course, as we have said, California remains free, through legislative or judicial action, to adjust its "original writ" system accordingly.

## IV

It remains to ask whether Saffold delayed "unreasonably" in seeking California Supreme Court review. If so, his application would no longer have been "pending" during this period. Saffold filed his petition for review in the California Supreme Court 4½ months after the California Court of Appeal issued its decision. The Ninth Circuit held that this filing was nonetheless timely. It based its conclusion primarily upon the fact that the California Supreme Court wrote that it denied the petition "on the merits and for lack of diligence." These first three words, the Ninth Circuit suggested, showed that the California Supreme Court could not have considered the petition too late, for, if so, why would it have considered the merits? 250 F. 3d, at 1267.

There are many plausible answers to this question. A court will sometimes address the merits of a claim that it believes was presented in an untimely way: for instance, where the merits present no difficult issue; where the court wants to give a reviewing court alternative grounds for deci-

sion; or where the court wishes to show a prisoner (who may not have a lawyer) that it was not merely a procedural technicality that precluded him from obtaining relief. Given the variety of reasons why the California Supreme Court may have included the words "on the merits," those words cannot by themselves indicate that the petition was timely. And the Ninth Circuit's apparent willingness to take such words as an absolute bellwether risks the tolling of the federal limitations period even when it is highly likely that the prisoner failed to seek timely review in the state appellate courts. See, e. g., *Welch* v. *Newland*, 267 F. 3d 1013 (CA9 2001) (finding limitations period tolled during 4-year gap). The Ninth Circuit's rule consequently threatens to undermine the statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims. See *Duncan*, 533 U. S., at 179.

If the California Supreme Court had clearly ruled that Saffold's 4½-month delay was "unreasonable," that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was "entangled" with the merits. 250 F. 3d, at 1267. We cannot say in this case, however, that the Ninth Circuit was wrong in its ultimate conclusion. Saffold argues that special circumstances were present here: He was not notified of the Court of Appeal's decision for several months, and he filed within days after receiving notification. And he contends it is more likely that the phrase "lack of diligence" referred to the delay between the date his conviction became final and the date he first sought state postconviction relief—a matter irrelevant to the question whether his application was "pending" during the 4½-month interval. We leave it to the Court of Appeals to evaluate these and any other relevant considerations in the first instance. We also leave to the Court of Appeals the decision whether it would be appropriate to certify a question to the California Supreme Court

for the purpose of seeking clarification in this area of state law.

*   *   *

For the foregoing reasons, we answer the first two issues presented in this case in the affirmative, vacate the judgment of the Court of Appeals, and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE, JUSTICE SCALIA, and JUSTICE THOMAS join, dissenting.

Respondent is a California prisoner who did not file a notice of appeal. The Court, however, begins by considering a question not presented, whether the statute of limitations would have been tolled for a hypothetical prisoner who filed an appeal somewhere else. This is a strong indication that the Court is off in the wrong direction. After holding that tolling applies for its hypothetical appellant, the Court finally gets to California, where no appeal was filed. On the Court's view, California's procedures are "unique," *ante*, at 217, so giving them special treatment under the statute will affect only that one State. It is quite wrong about this. In fact, today's ruling will disrupt the sound operation of the federal limitations period in at least 36 States. This is what happens when the Court departs from the text of a nationwide statute to reach a result in one particular State.

The Court's conclusion that an application is pending before the filing of an original writ in the California Supreme Court rests on three propositions: First, "application" means "petition, appeal from the denial of a petition, and anything else that functions as an appeal." Second, California's procedures are very different from those in other States. Third, a petition for an original writ in the California Supreme Court functions as an appeal. The first is an untenable interpretation of statutory text. The second and third, however, are wrong on both the facts and the law. The rem-

edies available in the California Supreme Court are no different from those available in most other state supreme courts. Like 36 other States, California allows its high court both to reverse the denial of habeas corpus in the lower court and to grant an original petition for habeas outright. In California, as in other States, these procedures differ in more than name. They differ with respect to the question in this case: whether an application was pending in the 4-month period between the denial of respondent's habeas petition in the California Court of Appeal and his filing of a new petition in the California Supreme Court.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. § 2244(d)(1), provides a 1-year statute of limitations for filing a federal habeas corpus petition, but it tolls the limitations period while a "properly filed application" for collateral review is "pending" in the state courts. The Court now holds that on the day before respondent filed an original petition in the California Supreme Court, his application was "properly filed" and "pending" somewhere. The Court does not say what that application was, nor does it identify the court in which it was filed. This is because nothing had been under consideration or awaiting the result of an appeal for four months, since the California Court of Appeal had denied respondent's previous application.

Instead of identifying a particular pending application, the Court relies upon an expansive definition of the term. The Court begins by defining "pending," offering one definition for when the word is used as an adjective and another for when used as a preposition. See *ante*, at 219. As the statute only uses the word as an adjective (tolling while the application "is pending"), the latter definition is irrelevant and misleading. When used as an adjective, the definition does not help the Court. The Court says "pending" means "'in continuance' or 'not yet decided.'" *Ibid.* (quoting Webster's Third New International Dictionary 1669 (1993)). The real

issue though is not what "pending" means, but when is an "application . . . pending." The Court asserts that "an application is pending as long as the ordinary state collateral review process is 'in continuance' . . . ." *Ante*, at 219–220. That is only true, of course, if "application" means the "ordinary state collateral review process," a proposition that finds no support in Webster's Third. Indeed, it is inconsistent with *Artuz* v. *Bennett*, 531 U. S. 4 (2000), which recognized that an "application" is a "document" distinct from the legal claims contained within it. *Id.*, at 8, 9. The word, "application," appears in numerous other places in the laws governing federal habeas corpus. *E. g.*, 28 U. S. C. § 2242 ("application for a writ of habeas corpus shall be in writing signed and verified"); § 2243 (a "judge entertaining an application for a writ of habeas corpus"). In each place, it is clear that the statute refers to a specific legal document; in none is the word used as a substitute for the ordinary collateral review process. Without discussing *Artuz* or these many statutory references, the Court gives "application" a new meaning, one that does not even require the existence of any document evidencing the "application," and one that embraces the multiple petitions, appeals, and other filings that constitute the "ordinary state collateral review process." *Ante*, at 219–220.

The Court explains that the original petition in the California Supreme Court is part of the ordinary collateral review process because it functions as an appeal under California law. California, the Court says, "does not require, technically speaking, appellate review of a lower court determination. Instead it contemplates that a prisoner will file a new 'original' habeas petition." *Ante*, at 221. This is an incorrect statement of California law. While California does not permit appeals of the California Superior Court's denial of habeas corpus, it does provide for "appellate review" of the denial of a petition for habeas corpus by the California Court of Appeal. That appeal is not just available; as the Court concedes, *ante*, at 224–225, the California Supreme

Court has said that it is the preferred practice. See *In re Reed*, 33 Cal. 3d 914, 918, and n. 2, 663 P. 2d 216, 217, and n. 2 (1983). Section 1506 of the Cal. Penal Code Ann. (West 2000) provides: "[I]n all criminal cases where an application for a writ of habeas corpus has been heard and determined in a court of appeal, either the defendant or the people may apply for a hearing in the Supreme Court." Respondent had 10 days after the Court of Appeal denied his petition to file a petition for review. Cal. App. Rules of Court 28(b), 50(b) (2002). The Court's analysis is thus premised on a misinterpretation of California law.

Had respondent filed the appeal provided by Cal. Penal Code Ann. § 1506 (West 2000), his application might have remained pending during the 10 days while he prepared his appeal and while the appeal was under consideration by the California Supreme Court. This is because an appeal is not a new application; rather, it is a request that the appellate court order the lower court to grant the original application. Congress used the word "application" in precisely this way for federal petitions for habeas corpus—distinguishing between "appeals," see 28 U. S. C. § 2253, and second or successive "applications," see § 2244. Thus, an application may remain "pending" in the lower court while the prisoner pursues his appeal, because the lower court may grant the original application at some point in the future.

An application does not remain pending, however, once the court that has denied it loses the power to ever grant it. When the Court of Appeal denied respondent's petition and respondent did not appeal, the petition became final and was no longer pending before that court. See Cal. App. Rule of Court 24 (2002) ("When a decision of a reviewing court is final as to that court, it is not thereafter subject to modification or rehearing by that court . . ."). Respondent could not ask the Court of Appeal to grant the application, and respondent could not request that the California Supreme Court order the Court of Appeal to grant the application.

Instead respondent filed a new application, a petition for a writ of habeas corpus, invoking the original jurisdiction of the California Supreme Court. See Cal. Const., Art. VI, § 10 (Supp. 2001). Under California law, the original petition began a new proceeding that had no proximate connection to the proceedings in the California Court of Appeal. See *People* v. *Romero*, 8 Cal. 4th 728, 737, 883 P. 2d 388, 391 (1994). The California Supreme Court had no power to grant the previous petition, and it did not even have the power to vacate the judgment of the lower state court. See *In re Michael E.*, 15 Cal. 3d 183, 192–193, n. 15, 538 P. 2d 231, 237, n. 15 (1975). There is no sense in which, before or after the filing of a petition for an original writ, an application remained pending below.

Even if California recognized an original writ as an equivalent procedure to an appeal for purposes of state law, the two procedures would differ with respect to the federal statutory question in this case. When a prisoner files an appeal, the original application remains pending in the lower court, but when a prisoner files an original writ, there is no application pending in any lower court. As it turns out, however, California law does not regard an appeal and an original writ as equivalents. California recognizes that a prisoner may obtain relief through either procedure, but the California Supreme Court has said an appeal is preferred. *In re Reed*, *supra*, at 918–919, and n. 2, 663 P. 2d, at 217, n. 2. At the same time, a prisoner may use an original writ in circumstances where an appeal is not available. Although California encourages prisoners to exhaust claims in the lower courts, the claims within an original petition need not be the same as those presented earlier. *E. g., In re Black*, 66 Cal. 2d 881, 428 P. 2d 293 (1967); Cal. App. Rule of Court 56(a)(1) (2002) (directing prisoners to explain why the exhaustion rule should not apply). Indeed, the California Supreme Court may grant relief even if the prisoner has not filed any petition in the lower courts. *E. g., In re Moss*, 175 Cal. App.

3d 913, 922, 221 Cal. Rptr. 645, 649 (1985). As the new petition constitutes a new application in form and function, the California Supreme Court has long recognized what our Court today refuses to see. After the denial of a habeas petition, there is no application "pending" in any court:

> "Where a petitioner was remanded to custody by a superior court, and the proceeding instituted in that court was thus terminated and was no longer a matter *pending therein*, he could inaugurate a *new proceeding* for relief in another court and can still do so, but is now limited in the making of a new application by statutory provision to a higher court, either the district court of appeal having jurisdiction, or the supreme court." *In re Zany*, 164 Cal. 724, 727, 130 P. 710 (1913).

The petition thus is not pending even under state law: Each habeas petition is a *"new proceeding* for relief," *ibid.*, and is not the same case, let alone the same application. Each time a California court denies a petition, the application is "no longer a matter *pending*," *ibid.*, before any court, because it can no longer be granted by that court or any other court in the future.

The Court's contrary conclusion does not depend upon any reasonable construction of a "pending application." It depends entirely upon the proposition that when California says "original writ," it means "appeal," and federal courts must not privilege form over substance. But California provides for an appeal, see Cal. Penal Code Ann. § 1506 (West 2000), and none was taken here. It is impossible to understand why the Court has ignored this provision by which California provides for an appeal, just like every other State.

The Court also has ignored the fact that most other States provide for original writs, just like California. As a consequence, the Court's error is of substantial significance beyond this case; for the California Supreme Court's original jurisdiction to issue writs of habeas corpus is not some quirk

of California law. At least 36 other States grant their supreme courts original jurisdiction over petitions for habeas corpus as well as appellate jurisdiction over a habeas determination in the lower courts. See Appendix, *infra*. Congress, of course, understands this distinction, since it has provided both procedures for our own Court. A state prisoner seeking to challenge the validity of his sentence may seek review of a lower court's decision by filing a petition for certiorari, 28 U. S. C. § 1257, or he may file a petition for an original writ of habeas corpus, § 2241. While the prisoner may obtain relief through either procedure, there is a clear distinction between an appeal—which requests that we order the lower court to grant an application pending before it—and a petition for a writ of habeas corpus—which requests that we grant the relief ourselves. Before this case no one thought that distinction to be merely one of form and not substance.

The Court is thus quite mistaken to conclude that its decision concerns only the procedures within California. The Court distinguishes California from other States because California "has engrained original writs—both at the appellate level and in the supreme court—into its normal collateral review process." *Ante,* at 224. This statement is not correct even for California. See *supra,* at 231–232. It may or may not be true for the four other States the Court cites, but even so the federal courts will have to test that point for dozens more. The Court's distinction between "appeal States" and "original writ States" is its own creation with no clear meaning under state law, not to mention a tie to the law Congress has enacted. Having departed from the sensible meaning of application, and the well-understood distinction between an appeal and an original writ, the Court now requires federal courts to define the ordinary collateral review procedures in each State. It may not be clear in how many States original writs will fall on the side of the ordinary, but it is clear that the question will be litigated. In

many, if not all, of the States mentioned above, a prisoner like respondent, relying upon today's decision, will be able to extend the federal tolling period, perhaps indefinitely, by filing a petition for an original writ of habeas corpus in a state supreme court many months after his state appeal has been denied. See *Welch* v. *Newland*, 267 F. 3d 1013 (CA9 2001) (tolling the federal limitations for a 4-year gap).

In those jurisdictions the Court will create a strange anomaly. Now an application can be both pending and not pending, taking on what the Seventh Circuit has described as a "Cheshire-cat like quality, both there and not there at the same time." *Fernandez* v. *Sternes*, 227 F. 3d 977, 980 (2000). If, for instance, the Court's hypothetical prisoner declined to file an appeal to the State's highest court, and he went to federal court more than a year later, his petition would be dismissed as time barred. As no application had been on the docket of any court for a year, and no petition that he had addressed to any state court could ever be granted, no "properly filed application" was "pending" anywhere. Under the Court's view, however, it would be premature to say that the federal statute of limitations had expired. The prisoner could file a new petition invoking the original jurisdiction of the state high court, and if the court denied it on the merits (or without comment), a subsequent federal application could be timely even though the earlier one was too late.

Under today's ruling, the federal court would be required to rule that the state petition, which was not pending before, had retroactively become so, and the prisoner's new federal application was timely. This is not a sensible way of determining when an application is "pending" under the federal tolling provision. Whether an application is pending at any given moment should be susceptible of a yes or no answer. On the Court's theory the answer will often be "impossible to tell," because it depends not on whether an application is

under submission in a particular court but upon events that may occur at some later time.

The Court's insistence on treating an original writ as an appeal will create serious confusion in California—and else-where—for another reason. Federal courts will have to determine when an original writ is timely under California law because on the Court's holding only timely petitions cause an application to be (retroactively) pending. The problem, however, is that an original writ in California—like original writs elsewhere and unlike appeals in California and most everywhere else—does not have a strict time limit. Under California law the question is not whether a petition is "timely" but whether the prisoner exercised "due dili-gence" in filing his petition within a reasonable time after he becomes aware of the grounds for relief. *In re Harris*, 5 Cal. 4th 813, 828, n. 7, 855 P. 2d 391, 398, n. 7 (1993). This equitable concept is designed to be flexible, and it allows Cal-ifornia courts to correct miscarriages of justice, even those which happened long ago. *E. g., In re Stankewitz*, 40 Cal. 3d 391, 396, n. 1, 708 P. 2d 1260, 1262, n. 1 (1985) (hearing the merits despite an 18-month delay); *In re Moss*, 175 Cal. App. 3d, at 921, 221 Cal. Rptr., at 648 (hearing the merits despite a 9-month delay). Nothing about AEDPA suggests that Congress wanted to inject this degree of unpredictabil-ity into the 1-year statute of limitations, and it is hard to see how federal courts are to approach this state-law inquiry.

While there may be cases, like this one, where the Califor-nia courts expressly deny a petition for lack of diligence, the California courts routinely deny petitions filed after lengthy delays without making specific findings of undue delay. Brief for Respondent 40–41, n. 27. Under the Court's rule, federal courts will be required to assess, without clear guid-ance from state law, whether respondent exercised due dili-gence. This inquiry will create substantial uncertainty, and resulting federal litigation, over whether a prisoner had filed his habeas petition within a reasonable time. The uncer-

tainty may vex prisoners as well, for they cannot know whether the federal statute of limitations is running while they prepare their state petitions.

The Court's disposition in this very case proves that the timing question is often unanswerable. Even though this is the rare case where the California Supreme Court made a specific finding of "lack of diligence," the Court does not hold respondent's petition untimely. Instead, the Court concludes that the lack of diligence finding is ambiguous, because it might refer, not to respondent's 4-month delay in filing his final writ, but to his 5-year delay in pursuing any collateral relief at all. *Ante*, at 226. This ambiguity, however, should not benefit respondent. If the California court held that all of respondent's state habeas petitions were years overdue, then they were not "properly filed" at all, and there would be no tolling of the federal limitations period. See *Artuz* v. *Bennett*, 531 U. S., at 8. Our consideration whether respondent's petition was "pending" presupposes that it was "properly filed" in the California courts.

The Court takes a different view, but in delivering the case back to the Court of Appeals, it provides no guidance for resolving the ambiguity. As the question has been thoroughly briefed before our Court, it is difficult to see how the lower court would resolve it, if we could not. The Court says that the Court of Appeals might certify a question to the California Supreme Court, but it gives no indication what that court might ask. Presumably, it is not suggesting that in every case where the California Supreme Court issues a summary denial, the Court of Appeals should certify the factbound question of what it really meant to say.

The Court begins in a hypothetical jurisdiction, and it ends without answering the question presented. Both points are telling. By leaving the text of the federal statute behind and calling California's procedures something they are not, the Court has complicated the disposition of the thousands of petitions filed each year in the federal district courts in

California.  See U. S. Dept. of Justice, Bureau of Justice Statistics, Prisoner Petitions Filed in U. S. District Courts, 2000, with Trends 1980–2000, p. 3 (Jan. 2002) (California state prisoners filed 4,017 federal petitions in 2000).  The Court also raises these questions in the numerous jurisdictions that permit original writs in addition to appeals.  Applying the clear words of the statute to the clear law in California would have been much easier.

I would reverse the judgment of the Court of Appeals.

## APPENDIX TO OPINION OF KENNEDY, J.

Ala. Code § 12–2–7(3) (1995); Ariz. Const., Art. VI, § 5(1); Ark. Const., Art. VII, § 4; Colo. Const., Art. VI, § 3; Fla. Rule App. Proc. 9.030(a)(3) (2002); Haw. Rev. Stat. § 660–3 (1993); Idaho Code § 19–4202(1) (Supp. 2001); Ill. Const., Art. VI, § 4(a); Iowa Const., Art. V, § 4; Kan. Const., Art. III, § 3; La. Const., Art. V, § 2; Me. Rev. Stat. Ann., Tit. 14, § 5301 (1980); Md. Cts. & Jud. Proc. Code Ann. § 3–701 (1974–1998); Mich. Comp. Laws Ann. § 600.4304(1) (West 2000); Mo. Const., Art. V, § 4(1); Mont. Const., Art. VII, § 2(1); Neb. Rev. Stat. § 24–204 (1995); Nev. Const., Art. VI, § 4; N. H. Rev. Stat. Ann. § 490:4 (1997); N. M. Const., Art. VI, § 3; N. C. Gen. Stat. § 7A–32(a) (1999); N. D. Cent. Code § 27–02–04 (1991); Ohio Const., Art. IV, § 2; Okla. Const., Art. VII, § 4; Ore. Const., Art. VII, § 2; 42 Pa. Cons. Stat. § 721(1) (1981); R. I. Gen. Laws § 8–1–2 (1997); S. C. Code Ann. § 14–3–310 (1977); S. D. Const., Art. V, § 5 (1978); Tex. Const., Art. V, § 3 (Supp. 2002); Utah Code Ann. § 78–2–2 (2001 Supp.); Vt. Stat. Ann., Tit. 4, § 2(b) (1999); Va. Const., Art. VI, § 1; Wash. Rev. Code § 2.04.010 (1994); W. Va. Code § 51–1–3 (2000); Wyo. Const., Art. V, § 3.