# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-2518

EVAN GRIFFITH,

*Petitioner-Appellant,*

*v.*

DAVE REDNOUR, Warden,
Menard Correctional Center,

*Respondent-Appellee.*

————————

On Petition for Rehearing and
Rehearing En Banc

————————

DECIDED OCTOBER 28, 2010

————————

Before EASTERBROOK, *Chief Judge*, and BAUER and WOOD, *Circuit Judges*.

PER CURIAM. The panel has voted unanimously to deny the petition for rehearing. A judge in active service called for a vote on the suggestion for rehearing en banc. A majority did not favor rehearing en banc, and the petition therefore is denied.

Circuit Judges Rovner, Williams and Hamilton voted to rehear the appeal en banc.

HAMILTON, *Circuit Judge*, with whom ROVNER and WILLIAMS, *Circuit Judges*, join, dissenting. Petitioner Griffith presented his constitutional claims to the Illinois courts, which rejected them without a majority opinion. *People v. Griffith*, 634 N.E.2d 1069 (Ill. 1994). Griffith's death sentence for murder was later commuted to a life sentence in prison. After exhausting his available remedies in post-conviction proceedings in the state courts, Griffith sought federal habeas relief. The district court denied relief on the ground that Griffith had filed his federal petition about two weeks too late under the federal habeas statute of limitations, 28 U.S.C. § 2244(d). The panel has affirmed, *Griffith v. Rednour*, 614 F.3d 328 (7th Cir. 2010), and a majority of the court has voted to deny rehearing en banc.

I respectfully dissent from the denial of rehearing en banc. The Illinois Supreme Court granted Griffith permission to file an otherwise-untimely petition for leave to appeal a denial of post-conviction relief because Griffith's lawyer was too ill to come to work. The panel held that the Illinois Supreme Court's decision to allow the filing did not toll the statute of limitations for filing a federal habeas corpus petition for the two weeks between the expiration of the filing deadline and the filing of Griffith's motion for leave to file the late petition.

Based on the Supreme Court's interpretation of the tolling provision in 28 U.S.C. § 2244(d)(2), I believe that this conclusion was wrong. The federal courts should give the state court's decision on timeliness the same effect the state courts did. Correcting this error deserves en banc consideration because the general problem—the proper calculation

of the federal limitations period when a petitioner has missed a deadline in the state courts, but the state courts have excused the delay—is a recurring issue in the district courts and for us.

The problem is one of the intricate details arising from Congress's decision in 1996 to establish a one-year statute of limitations for seeking habeas corpus relief in federal court. See 28 U.S.C. § 2244(d)(1). That time is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). In this case, petitioner Griffith sought post-conviction relief in the Illinois state courts. As the panel opinion explains, the Illinois Appellate Court affirmed the denial of that relief on July 13, 2005. Griffith actually filed on August 1st a "notice of intent to file petition for leave to appeal," and under the rules then in effect, he then had until August 17th to file his petition for leave to appeal with the Illinois Supreme Court. Griffith missed that deadline. On September 1st, though, Griffith filed a petition for leave to appeal, along with a motion for leave to file that petition instanter. The motion explained that his lawyer in the state appellate public defender's office had been ill.

Over the state's objection, the Illinois Supreme Court granted Griffith's motion on September 13th. The court then considered Griffith's petition on the merits and denied it on December 1, 2005. Griffith filed his federal petition 364 days later, on November 30, 2006. Application of the one-year deadline in section 2244(d)(1) therefore

depends on whether we treat Griffith's petition for leave to appeal as "pending" between the August 17th expiration of the time to file the petition and either his September 1st filing or the state court's September 13th grant of leave to file instanter.

The panel opinion concludes that there was nothing actually "pending" during that interim period, see 614 F.3d at 330, quoting and following *Fernandez v. Sternes*, 227 F.3d 977, 980 (7th Cir. 2000). The conclusion is certainly understandable. It is consistent with the reasoning that four dissenting justices of the Supreme Court found persuasive in *Carey v. Saffold*, 536 U.S. 214 (2002). But I believe the panel conclusion is wrong for three reasons:

  – First, the conclusion is inconsistent with the reasoning of the Supreme Court in *Carey* and its follow-up case, *Evans v. Chavis*, 546 U.S. 189 (2006), and more generally with the Supreme Court's approach to a closely-related question in *Jimenez v. Quarterman*, 129 S. Ct. 681 (2009).

  – Second, the panel conclusion produces a confusing solution that sets unnecessary traps for unwary petitioners and their lawyers.

  – Third, the panel conclusion winds up being over-protective of a state's interests when the state court has found no need for such protection.

The better approach here would be to follow the reasoning of *Carey* and *Evans* to hold that when a state court deems timely a request for further appellate review, the federal courts should treat the relevant state court petition

as having been pending throughout the entire period of state court review, without having to go back and look for potential "gaps" in the state courts' process.

1. *The Supreme Court's Decisions in Carey v. Saffold and Evans v. Chavis*

The specific problems addressed in *Carey* and *Evans* stemmed from an unusual feature of California's post-conviction procedure. Rather than taking an "appeal" from a trial court's denial, the petitioner files a new original petition in the appellate court, and if that is denied, files a new original petition in the state supreme court. There are no specific deadlines, though; California requires only that the later petition be filed within a reasonable time after denial of the earlier. The question in *Carey* was whether the federal clock was tolled in the period between the appellate court's denial of relief and the filing of the later petition with the state supreme court. The Court stated the general rule: "an application [for post-conviction relief] is pending as long as the ordinary state collateral review process is 'in continuance'—*i.e.*, 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Carey*, 536 U.S. 214, 220 (2002). In *Carey*, the Court remanded to the Ninth Circuit to figure out whether the state courts had treated the petition as timely: If the California court had clearly ruled that the delay in filing had been unreasonable, "that would be the end of the matter." 536 U.S. at 226. But if the state court had treated

the filing as timely, then the federal claim would have been timely as well. The Supreme Court remanded the case to the Ninth Circuit to clarify what the state court had actually decided. *Id.*

To the extent that *Carey* left any doubt as to whether state law controls any pendency analysis under the habeas tolling provision, *Evans* dispelled that doubt. "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law." *Evans v. Chavis*, 546 U.S. 189, 191 (2006) (emphasis in original). "If the filing of the appeal is timely, the period between the adverse lower court decision and the filing . . . is not counted against the 1-year AEDPA time limit." *Id.* at 192.[1]

Under *Carey* and *Evans*, then, the issue here is whether Griffith's appeal was actually timely under state law. *Evans*, 546 U.S. at 197. At first blush, Griffith's appeal might seem untimely. Illinois Supreme Court Rule 315 then set a 35-day time limit to file a PLA, and Griffith admittedly failed to file within that time. But the state court "may extend the time for petitioning for leave to

---

[1] The panel tried to distinguish *Carey* as having dealt only with whether the petition was "properly filed" under 28 U.S.C. § 2244(d)(2), and not with whether it was "pending." *Carey* and *Evans* themselves do not support the distinction. See *Carey*, 536 U.S. at 217 ("This case raises three questions related to the statutory word 'pending'. . . .").

appeal" on a party's motion "in the most extreme and compelling circumstances." That's what the Illinois court did when it granted Griffith leave to file his PLA. See *Waucanda Fire Protection Dist. v. Stonewall Orchards, LLP*, 828 N.E.2d 216, 220 (Ill. 2005) ("[A]n order was entered granting the County's motion [for leave to appeal instanter], the effect of which was to extend the County's deadline for filing its petition for leave to appeal . . . ."); *id.* at 223 (referring to the grant of the motion for leave to file as an "extension"). (I agree with the panel's observation that, for federal habeas purposes, there is no difference under Illinois law between acceptance "instanter" and an extension of the time for filing the petition. 614 F.3d at 330. I draw the opposite conclusion from that observation, however.)

In other words, the state supreme court deemed Griffith's PLA timely for purposes of state law. Under *Carey* and *Evans*, that action should have tolled the federal limitations period for Griffith during the two-week gap, as well as the rest of the time his case was pending in the state courts. Under this reasoning, Griffith's federal petition was timely.

The panel in this case and the panel in *Fernandez v. Sternes*, 227 F.3d 977 (7th Cir. 2000), rejected the idea that a state court's allowance of a late filing could have the retroactive effect of making the state court case "pending" (for federal purposes) during such gaps in the state court proceedings. Yet the Supreme Court in *Jimenez v. Quarterman*, 129 S. Ct. 681 (2009), authorized an even greater retroactive "re-set" under section 2244(d). The

question in *Jimenez* was when the state courts' direct review of a conviction became final for purposes of section 2244(d)(1). After the petitioner's initial appeal had concluded, he sought state post-conviction relief. The state courts ordered that he be allowed to pursue a second out-of-time appeal because he had not been kept informed by his lawyer or the state courts about his first appeal. The issue for the Supreme Court was whether the date of final decision was the conclusion of the first appeal or the second out-of-time appeal. The Court held that the second appeal was the relevant one: "once the [state court] reopened the direct review of petitioner's conviction on September 25, 2002, petitioner's conviction was no longer final for purposes of § 2244(d)(1)(A). Rather, the order 'granting an out-of-time appeal restore[d] the pendency of the direct appeal.'" 129 S. Ct. at 686. In other words, the state courts' actions had the retroactive effect of making what had once been a final decision by the state courts no longer final for federal purposes.

From *Jimenez*, as well as *Carey* and *Evans*, I conclude that when a state court decides to excuse a criminal defendant's failure to meet state court deadlines, the federal courts should give the same retroactive effect to that state court decision when calculating timeliness under section 2244. It's the fair thing to do, and it's consistent with the language and purpose of the statute.

### 2. *Practical Considerations*

The panel's decision not to give federal effect to a state court's decision to grant a retroactive extension of time in

state court will produce unnecessary confusion and lay traps for unwary petitioners and their lawyers in an area that is already complex enough and provides ample protection against stale claims. When petitioners and their lawyers try to figure out their federal filing deadline, rather than focusing on the start and end of the entire state court post-conviction proceedings, they will also need to review every stage of the docket to look for "gaps" during which the federal courts will conclude that nothing was actually "pending" in the state courts.

That is a problem. Under the panel's approach, the decisive fact will not be whether the state court actually granted an extension of time, but whether the petitioner sought the extension before or after the relevant deadline expired. And keep in mind that where the "prison mail-box" rule applies, it may be difficult to figure out the relevant filing date. Under *Carey* and *Evans*, though, when the state courts have been willing to grant the extension of time at all, that should be enough, without having to determine exactly when the request was filed. Federal courts often grant retroactive extensions of time (except in those rare instances where they are prohibited). Once they are granted, no one looks back later to determine whether the motion was filed before or after the deadline expired. Yet the panel's approach here makes that date in state court decisive in the federal case.

As a sign of just how technical this can become, note that in Griffith's own case, the state did not even raise the timeliness issue until 22 months after he filed his federal petition. In an ordinary civil case, such a late assertion of a

statute of limitations defense would likely be deemed a waiver. The district court can exercise its discretion to allow such a late assertion, of course, as happened here. Ironically, though, the federal court's belated extension of time had a fully retroactive effect, which allowed a new defense based on *not* giving retroactive effect to the state court's decision to grant an earlier retroactive extension of time.

The panel was concerned that a distinction between pre- and post-deadline extensions of time is necessary to prevent multi-year delays in the filing of appeals. 614 F.3d at 330, quoting *Fernandez v. Sternes*, 227 F.3d 977, 980 (7th Cir. 2000). This concern is exaggerated. Surely it would be extremely rare for a state court to allow several years to appeal. Realistically, the state courts will allow extensions of time only after relatively short, justifiable delays such as the one at issue in this case. And in the rare case where a state court does allow a significant delay in bringing an appeal, a federal court should respect its reasons for doing so, in the interest of comity. See *Carey*, 536 U.S. at 223. (Recall that Illinois allows such extensions only "in the most extreme and compelling circumstances.") Otherwise, a federal court will find itself in the position of second-guessing the states' decisions about how to manage their own criminal justice systems.

### 3.  *Giving the State More Protection Than It Sought*

By construing the tolling provision as it did, the panel disregarded the very interests that the provision was meant to protect. It is, after all, "the State's interests that

the tolling provision seeks to protect." 536 U.S. at 223. The state courts concluded that the right and fair thing to do was to extend Griffith's time to seek review on the merits in this murder case with a life sentence. That decision deserves federal respect, particularly when the extension was needed not because of counsel's negligence but because of counsel's illness.

But under the panel's interpretation of the tolling provision, it does not matter what the state's interests might be. No matter the state court's reason for granting a retroactive extension of time to appeal, the federal clock continues to run. For example, if a prison riot or a natural disaster prevented a prisoner from filing a petition for leave to appeal or a request for an extension of time to file within the time set by state rule, the federal clock apparently would run at least until the state prisoner was able to file a late petition for leave to appeal, if not longer. I recognize that there might be some room to argue for equitable tolling in such extreme cases. I also recognize that Griffith's lawyers took a chance by waiting until what they thought was the last day to file his federal petition. But federal law does not require the panel's result, and I believe the Supreme Court decisions discussed above point in the direction of honoring the state court's decision to allow a retroactive extension of time.

Finally, I note that Griffith has also sought rehearing en banc on the question whether a claim for actual innocence provides an exception to the statute of limitations in section 2244(d). Our circuit has said no, and there is already a circuit split on this issue. See *Araujo v. Chandler*,

435 F.3d 678, 681 (7th Cir. 2005) (reviewing split); see also *Lee v. Lampert*, 610 F.3d 1125, 1128 (9th Cir. 2010) (same). Regardless of the merits of that question, I agree with my colleagues that we should not rehear this case en banc to decide whether we should move from one side of the split to the other; that issue is now ripe for Supreme Court resolution.