**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 5, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL J. FISHER,

        Petitioner - Appellant,

v.

RICK RAEMISCH, Executive Director
Colorado Department of Corrections;
JOHN DAVIS, Warden, Buena Vista
Correctional Facility; JOHN SUTHERS,
Attorney General, State of Colorado,

        Respondents - Appellees.

No. 13-1144

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:13-CV-00146-LTB)**

---

Alison Ruttenberg, Boulder, CO, for Petitioner-Appellant.

John D. Seidel, Senior Assistant Attorney General, (John W. Suthers, Attorney
General, with him on the brief), Appeals Unit, Criminal Justice Section, Office of
the Attorney General for the State of Colorado, Denver, CO for Respondents-
Appellees.

---

Before **LUCERO**, **MURPHY**, and **BACHARACH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

This appeal involves timeliness. Habeas petitions are subject to a one-year limitations period. *See* Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1) (2012). But the limitations period is tolled during the pendency of an application for post-conviction relief. *Id.* § 2244(d)(2). Mr. Michael Fisher filed a post-conviction application, but the state district court waited over eight years to rule. The Respondents argue that by failing to ask for an expeditious ruling, Mr. Fisher abandoned the post-conviction proceedings.

In light of this argument, we must decide: Does a state post-conviction application remain "pending" when it could have been (but wasn't) dismissed on grounds of abandonment? We conclude that the application does remain pending in these circumstances. Thus, the limitations period was tolled while the post-conviction application worked its way through the state courts. Because the federal district court drew the opposite conclusion, we reverse.

## I.     The State Proceedings

Mr. Fisher was convicted of felony murder, aggravated robbery, and conspiracy to commit aggravated robbery. In October 2001, he filed an application for state post-conviction relief in Colorado state court, invoking Rule 35(c) of the Colorado Rules of Criminal Procedure.

Mr. Fisher's counsel set a notice of hearing in 2006, and the state district court conducted the hearing three years later. At this hearing, Mr. Fisher presented evidence, and the court denied the eight-year-old application on the merits. Mr. Fisher appealed;

2

and, in 2012, the Colorado Court of Appeals affirmed—again, on the merits. Mr. Fisher filed a petition for certiorari in the Colorado Supreme Court, which was also denied.

## II.  The Federal District Court's Ruling

Mr. Fisher then filed a petition for habeas relief with the federal district court. The court concluded that the state application was no longer pending as of October 2004 even though the state courts later decided the merits in 2009 and again in 2012. Because Mr. Fisher waited until 2013 to file his federal habeas petition, the federal district court denied habeas relief on the ground that the action was untimely.

## III.  The Duration of the Post-Conviction Proceedings & Meaning of the Term "Pending"

In federal district court, the Respondents argued that the one-year limitations period had begun on January 8, 2001, when the state court conviction became final. But Mr. Fisher filed a post-conviction application on October 1, 2001, which tolled the limitations period as long as the application continued to "pend." 28 U.S.C. § 2244(d)(2) (2012). Mr. Fisher asserts that the application remained pending until October 15, 2012, when the state supreme court denied certiorari; the Respondents assert that the application stopped pending as early as October 28, 2004.

The difference proves decisive. When Mr. Fisher filed his post-conviction application on October 1, 2001, 266 of his 365 days had already passed; and he filed the federal habeas petition roughly 12 years after initiating state post-conviction proceedings. If the post-conviction application stopped pending by October 28, 2004, as the Respondents say, the habeas action would have been untimely by roughly 9 years. But if

3

the post-conviction application stopped pending on October 15, 2012, as Mr. Fisher says, the habeas action would have been timely. Thus, the decisive issue is how long the tolling lasted. That issue turns on the meaning of the term "pending," as used in 28 U.S.C. § 2244(d)(2).[1]

In ascertaining the meaning of this term, we apply federal law. *See Gibson v. Klinger*, 232 F.3d 799, 806 (10th Cir. 2000). Under federal law, the post-conviction application begins to pend when it is accepted for filing. *See Artuz v. Bennett*, 531 U.S. 4, 9 (2000). The application continues to pend until it has "achieved final resolution through the state's post-conviction procedures." *Carey v. Saffold*, 536 U.S. 214, 220 (2002).

## IV.    Application of the Term "Pending"

Mr. Fisher's Rule 35(c) application continued to appear on the state courts' dockets from October 2001 to October 2012. And apparently, the state courts considered the application to be pending throughout this time period, as the state district court and intermediate appellate court decided the merits.

The Respondents do not contest the existence of the post-conviction application on the state courts' dockets from 2001 to 2012. Nonetheless, the Respondents argue that Mr. Fisher abandoned the application by waiting too long to request an expeditious

---

[1]    The limitations period is tolled only if the post-conviction application was "properly filed." 28 U.S.C. § 2244(d)(2) (2012). The district court assumed the post-conviction application was properly filed, but did not decide the issue. D. Ct. Order at 8-9 (Mar. 18, 2013). The Respondents concede that the post-conviction application was properly filed, stating: "Everyone agrees that the motion at issue here was properly filed. The question is when it stopped being 'pending.'" Appellees' Answer Br. at 10 (Aug. 26, 2013).

4

ruling. To support this contention, the Respondents rely on *People v. Fuqua*, 764 P.2d 56 (Colo. 1988). But the Respondents read too much into *Fuqua* and incorrectly assume that an application stops pending whenever it can be deemed "abandoned" under state law.

*Fuqua* involved a state district court's subject matter jurisdiction over a timely filed motion for a reduction of sentence under Rule 35(b) of the Colorado Rules of Criminal Procedure. *Fuqua*, 764 P.2d at 61. Rule 35(b) motions, unlike Rule 35(c) applications, must be filed within 126 days of sentencing. Colo. R. Crim. P. 35(b). Colorado courts have held that a Rule 35(b) motion extends not only the time for a sentence to become final, but also the length of the state district court's jurisdiction. *See People v. Cagle*, 807 P.2d 1233, 1234 (Colo. App. 1991).

In *Fuqua*, the Colorado Supreme Court held that this extension of jurisdiction continues only for a "reasonable period of time." *Fuqua*, 764 P.2d at 61. Thus, if the state district court fails to decide the Rule 35(b) motion within a "reasonable period of time," the defendant must make reasonable efforts to secure an expeditious ruling. *Id.* If the defendant fails to do so, the Rule 35(b) motion should be "deemed abandoned," resulting in a loss of jurisdiction. *Id.*; *Herr v. People*, 198 P.3d 108, 113 (Colo. 2008). But even if a court could or should have deemed Mr. Fisher's Rule 35(c) application "abandoned,"[2] it remained pending—for purposes of federal law—until the Colorado Supreme Court denied certiorari.

---

[2]    For the sake of argument, we can assume that *Fuqua* applies to post-conviction applications under Rule 35(c), as well as motions for sentence reduction under Rule 35(b). *Compare People v. Renaud*, 942 P.2d 1253, 1255 (Colo. App. 1996) (declining to apply *Fuqua*'s abandonment principle to motions for a new trial), *with People v. Valdez*,

For the sake of argument, we can assume that: (1) *Fuqua* permits a state district court to deem a motion "abandoned" when it fails to timely rule and the movant fails to press for a ruling, and (2) these circumstances existed here. Notwithstanding these assumed circumstances, the state district court eventually conducted an evidentiary hearing and ruled on the merits. The state district court and appeals court never suggested that Mr. Fisher had abandoned the application or that jurisdiction had ceased with the passage of time.

Against this backdrop, the Respondents argue that the post-conviction application was no longer pending because Mr. Fisher waited too long to request an expeditious ruling. No Colorado court has gone this far in interpreting *Fuqua*.

The Respondents ask us to extend *Fuqua* by assuming that an action is no longer "pending" if the petitioner "abandons" the action by failing to ask for an expeditious ruling. *Fuqua* does not address whether the action continues to pend after abandonment, and no Colorado court has suggested that an action automatically terminates when a claimant fails to press for a ruling.

The Respondents assume that an action cannot pend under federal law if it has been abandoned under Colorado law. Through this assumption, the Respondents ignore the decisive issue: Does Colorado law consider the action automatically terminated once it has been abandoned? No court in Colorado has gone that far. Instead, Colorado courts

---

178 P.3d 1269, 1281-82 (Colo. App. 2007) (remanding for a determination whether the petitioner abandoned his right to post-conviction relief under Rule 35(c)).

have held that a case continues to "'pend[]' until final determination on appeal." *In re Custody of Rector*, 565 P.2d 950, 952 (Colo. App. 1977).

This definition of "pending" would require us to treat Mr. Fisher's post-conviction application as "pending" under Colorado law even if it had been abandoned under *Fuqua*. Mr. Fisher appealed the post-conviction ruling, and that appeal did not result in a final determination until October 2012, roughly eight years after the alleged date of "abandonment" (October 2004). Thus, under Colorado law, the Rule 35(c) action would have been considered "pending" until October 2012 even if a court could have earlier deemed the action "abandoned" under *Fuqua*.

The Respondents acknowledge that we must apply federal law to interpret the meaning of the federal statutory term "pending." And under federal law, the state court action continued to "pend" until it reached a final resolution through Colorado's post-conviction procedures. *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002). Under this definition, Mr. Fisher's post-conviction application would have remained pending even if it had been abandoned. *See Artuz v. Bennett*, 531 U.S. 4, 9 (2000) (stating that a motion is considered "pending" even though the state district court lacks jurisdiction).

Relying on *Carey v. Saffold*, 536 U.S. 214 (2002), and *Evans v. Chavis*, 546 U.S. 189 (2006),[3] the Respondents argue that the state appellate court's decision to address

---

[3]     At oral argument the Respondents also relied on our decision in *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999), to argue that the action pended only while Mr. Fisher continued to properly use state court procedures to exhaust state court remedies. Oral Arg. at 22:47-23:49. *Barnett* does not support the Respondents' argument. There the federal district court narrowly defined "pending" to include "only the time during which an application for post-conviction relief remains unresolved by a

the merits does not affect whether the post-conviction proceedings remained "pending."

The Respondents draw the wrong lesson from *Carey* and *Evans*.

Both cases involved California's unique procedure for state habeas petitions. *See Carey*, 537 U.S. at 221 ("California's collateral review system differs from that of other states in that it does not require, technically speaking, appellate review of a lower court determination."). In California, prisoners filing state habeas petitions in lower courts can appeal within a reasonable time. *Id.* at 222. In *Carey*, the Supreme Court held that a post-conviction application "pends" under 28 U.S.C. § 2244(d)(2) between the denial of relief and the filing of a timely appeal. *Id.* at 217, 221, 225; *see Evans v. Chavis*, 546 U.S. 189, 197 (2006). The resulting question, in both *Carey* and *Evans*, was whether the state appeals were filed within a "reasonable" period of time. *See Carey*, 538 U.S. at 217; *Evans*, 546 U.S. at 198. In *Carey*, the petitioner took 4½ months to appeal; and in *Evans*, the petitioner took over 3 years to appeal. *Carey*, 536 at 217; *Evans*, 546 U.S. at 195.

In *Carey*, the Ninth Circuit Court of Appeals held that the post-conviction appeal was timely, reasoning that the state supreme court must have considered the appeal timely inasmuch as it decided to reach the merits. *Carey* at 225. The Supreme Court disagreed, reasoning that the state supreme court might have reached the merits even

state district court." *Barnett*, 167 F.3d at 1323. Because this definition unjustifiably excluded state procedural periods to appeal, we broadly construed the term "pending" to include "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies." *Id.* This definition does not limit the pendency period when, as here, an application for post-conviction relief remains unresolved by a state court. *See id.*

though it considered the appeal untimely. *Id.* at 225-26. Thus, the Supreme Court remanded for the Ninth Circuit to reconsider the timeliness of the state appeal. *Id.* at 226-27.

*Evans* addressed the same issue when the delay exceeded 3 years. *Evans*, 546 U.S. at 200. The Ninth Circuit again thought the state supreme court must have considered the appeal timely because it had reached the merits. *Id.* at 196.[4] And again, the Supreme Court thought the state appeals court might have had other reasons to decide the merits. *Id.* at 197-98.

From these opinions, the Respondents infer that the state courts' decisions to reach the merits of Mr. Fisher's action do not mean that it continued to pend for purposes of 28 U.S.C. § 2244(d)(2). But this inference ignores the context of *Carey* and *Evans*. In both cases, the Supreme Court was applying a unique tolling rule for periods in which a post-conviction application was between tribunals: In those circumstances, a post-conviction appeal results in further tolling only if it is timely. The Supreme Court wasn't ignoring the state appellate court's decision to reach the merits; it was simply saying that a decision to reach the merits did not necessarily signal a belief that the appeals were timely.

Here, the issue is different: Tolling turns on whether there was any action remaining in state court after October 28, 2004. If there wasn't, the state district and

---

[4] In *Evans*, the state supreme court did not say it was reaching the merits. *Evans*, 546 U.S. at 197. The Ninth Circuit surmised from the state appeals court's silence that it was reaching the merits. *Id.*

appellate courts would have been deciding the merits of a case that didn't exist any longer. That remarkable notion is nowhere to be seen in *Carey* or *Evans*.

By any conceivable measure, the state courts treated Mr. Fisher's post-conviction proceedings as an ongoing controversy when they reached the merits, and the application continued to "pend" regardless of whether the state courts could or should have found abandonment. Thus, Mr. Fisher's post-conviction proceedings remained pending from October 1, 2001 (when Mr. Fisher filed the Rule 35(c) application), to October 15, 2012 (when the state supreme court denied certiorari). During this eleven-year period, the limitations period was tolled. Mr. Fisher filed the federal habeas petition 99 days after the tolling ended. That was the last day of the limitations period. Thus, the habeas action was timely, and we reverse and remand for further consideration of the federal habeas petition.