**Jose Trancito LOPEZ, Petitioner,**

v.

**Thomas FELKER, Warden,
Respondent.**

No. CV 07–3083–ABC (JCR).

United States District Court,
C.D. California.

Jan. 18, 2008.

Jose Trancito Lopez, Susanville, CA, pro se.

Kenneth C. Byrne, Office of Attorney General of California, Los Angeles, CA, for Respondent.

**ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

AUDREY B. COLLINS, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the instant Petition and other papers along with the attached Report and Recommendation of the United States Magistrate Judge, and has made a *de novo* determination of the Report and Recommendation. The Court concurs with and adopts the conclusions of the Magistrate Judge.

IT IS ORDERED that a Judgment be entered dismissing the instant Petition for Writ of Habeas Corpus with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve forthwith a copy of this Order and the Judgment of this date on Petitioner.

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

JOHN C. RAYBURN, JR., United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Audrey B. Collins, United States District Judge, by Magistrate Judge John C. Rayburn, Jr., pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

**I. PROCEEDINGS**

On April 19, 2007, Jose Trancito Lopez ("Petitioner"), constructively filed[1] the

---

1. The prison mailbox rule holds that a habeas petitioner's state and federal filings are constructively filed when turned over to prison officials for forwarding to the Clerk of the Court. *See, e.g., Smith v. Duncan,* 297 F.3d 809, 814 (9th Cir.2002); *Huizar v. Carey,* 273 F.3d 1220, 1223 (9th Cir.2001). For pur-

poses of its analysis herein, the Court has utilized the signature date on Petitioner's *pro se* habeas petitions as the relevant filing date (since the signature date is the earliest date on which Petitioner could have turned the petition over to· the prison authorities for mailing).

current Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition"). On August 20, 2007, Thomas Felker ("Respondent") filed a Motion to Dismiss Petition for Writ of Habeas of Corpus ("MTD"), contending that the Petition was untimely. On September 6, 2007, Petitioner filed Petitioner's Opposition to Motion to Dismiss Petition for Writ of Habeas Corpus ("Opposition"). On September 13, 2007, Respondent filed a Reply to Opposition to Motion to Dismiss Petition for Writ of Habeas Corpus ("Reply").

Thus, this matter now is ready for decision.

## II. BACKGROUND

On September 16, 2003, in the Los Angeles County Superior Court, Petitioner was sentenced to state prison for twenty-five years to life following the entry of his guilty plea to the charges of first degree murder and forcible rape. (Lodgment 1.) He did not file a direct appeal. (Pet. at 3.)

On June 15, 2004, Petitioner constructively filed a habeas corpus petition in the Los Angeles Superior Court. (Lodgment 4.) On June 24, 2004, the court denied that petition. (Lodgment 5.)

On May 29, 2005, Petitioner constructively filed a petition for writ of coram nobis in the Los Angeles County Superior Court. (Lodgment 6.) That petition was denied on June 8, 2005. (Lodgment 7.)

On June 5, 2005, Petitioner constructively filed a habeas corpus petition in the California Court of Appeal. (Lodgment 10.) On June 16, 2005, the court of appeal denied that petition. (Lodgment 11.)

On August 16, 2005, Petitioner constructively filed a second habeas corpus petition in the California Court of Appeal. (Lodg-

ment 12.) On August 31, 2005, the court denied that petition. (Lodgment 13.)

On August 17, 2005, Petitioner constructively filed a habeas corpus petition in the California Supreme Court. (Lodgment 14.) He constructively filed a second habeas corpus petition in that court on December 15, 2005. (Lodgment 15.) On July 19, 2006, the supreme court denied both petitions. (Lodgments 16, 17.)

On April 19, 2007, the instant Petition was filed. Respondent contends that the Petition was filed outside the one-year limitation period prescribed by 28 U.S.C. § 2244(d)(1). This Court agrees.

## III. DISCUSSION

The current Petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law and thus is subject to the AEDPA's one-year limitation period, as set forth at 28 U.S.C. § 2244(d). *See Calderon v. U.S. Dist. Court (Beeler)*, 128 F.3d 1283, 1287 n. 3 (9th Cir.1997).[2] The relevant portion of that statute provides that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1).

 In most cases, the limitation period begins running on the date that a petitioner's direct review becomes final. As discussed above, Petitioner was sentenced on September 16, 2003. Petitioner

---

**2.** *Beeler* was overruled on other grounds in *Calderon v. U.S. Dist. Court (Kelly)*, 163 F.3d 530, 540 (9th Cir.1998) (en banc).

did not seek direct review, and therefore, for purposes of AEDPA's limitation period, his judgment of conviction became final sixty days later, on November 15, 2003 (which, falling on a Saturday, resulted in a further extension to Monday, November 18, 2003).[3] Thus, the limitation period began to run on November 18, 2003, and ended November 18, 2004. 28 U.S.C. § 2244(d)(1)(A); *see Patterson v. Stewart,* 251 F.3d 1243, 1246 (9th Cir. 2001). Petitioner did not constructively file this Petition until April 19, 2007. Thus, the pending Petition is time-barred unless Petitioner is entitled to statutory or equitable tolling.

**A.** ***Statutory Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)***

Title 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

▇▇▇ The United States Supreme Court has held that AEDPA's statute of limitations is tolled where a petitioner is properly pursuing post-conviction relief—the period is tolled during the intervals between one state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the state court system. *Carey v. Saffold,* 536 U.S. 214, 219–21, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). In *Nino v. Galaza,* F.3d 1003 (9th Cir.1999), the Ninth Circuit construed the foregoing tolling provision with reference to California's post-conviction procedures. The Ninth Circuit held that "the statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge." *Nino,* 183 F.3d at 1006 (footnote omitted). Claims denied as untimely or determined by the federal courts to have been untimely in state court will not satisfy the requirements for statutory tolling. *Evans v. Chavis,* 546 U.S. 189, 192–93, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006) (*citing Carey,* 536 U.S. at 222–23, 122 S.Ct. 2134).[4]

▇▇▇ As previously noted, the statute of limitations began to run on November 18, 2003. After this start date, on June 15, 2004, Petitioner constructively filed a state habeas petition in the superior court. At the time this state habeas petition was filed, 210 days of the statutory period had passed. That petition was denied on June 24, 2004. (Lodgments 4, 5.)

---

**3.** *See* Cal. R. Ct. 8.308(a) (stating "a notice of appeal must be filed within 60 days after the rendition of the judgment or the making of the order being appealed"); *see also* Cal.Civ. Proc.Code § 12a(a) ("If the last day for the performance of any act provided or required by law to be performed within a specified period of time is a holiday, then that period is hereby extended to and including the next day which is not a holiday. For purposes of this section, 'holiday' means all day on Saturdays . . . .")

**4.** The Court in *Evans* held that a California Supreme Court order silent on the grounds for the court's decision is not equivalent to a holding that the filing was timely. *Evans,* 546 U.S. at 197–98, 126 S.Ct. 846. Thus, in the absence of clear direction or explanation from the California Supreme Court about the meaning of the term "reasonable time" (in which to file a habeas petition), or clear indication that a particular request for appellate review was timely or untimely, the federal court must itself examine the delay in each case and determine what the state courts would have held with respect to timeliness. *Id.* at 198, 126 S.Ct. 846. That is, "the federal court must decide whether the filing of the request for state-court appellate review (in state collateral review proceedings) was made within what California would consider a 'reasonable time.' " *Id.*

On May 29, 2005, Petitioner filed his next state petition, also in the superior court, 339 days after the superior court denied his prior petition, and, therefore, days after the statute had run. Petitioner is not entitled to statutory tolling for his delay in filing this petition, or for time this petition was pending, because 1) he was not proceeding to the next higher court (*see Carey*, 536 U.S. at 219–21, 122 S.Ct. 2134); and 2) 28 U.S.C. § 2244(d) does not permit the reinitiation of the AEDPA limitation period that has ended before a state habeas petition is filed.[5] *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003); *Green v. White*, 223 F.3d 1001, 1003 (9th Cir.2000). Because the statutory period already had run, Petitioner also is not entitled to statutory tolling while any of his subsequent petitions were pending.

Based on the foregoing, unless Petitioner is entitled to equitable tolling, the current Petition is untimely.

### B. *Equitable Tolling*

▮ The one-year AEDPA limitation period is subject to equitable tolling if a petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).[6] A petitioner bears the burden of alleging facts that would give rise to tolling. *Id.* "[T]he threshold necessary to trigger equitable tolling under [the] AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)

(internal quotation marks and citation omitted). This high bar is necessary to effectuate the "AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims." *Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir.2003) (internal quotation marks and citation omitted). Equitable tolling determinations are "highly fact-dependent." *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir.2000) (en banc) (per curiam); *accord Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir.2002) (observing that equitable tolling determinations turn "on an examination of detailed facts").

▮ Petitioner alleges that he has a mental disorder that prevented him from filing the instant Petition within the statutorily prescribed period. (Opp'n at 3–9.) Mental incompetency is an extraordinary circumstance beyond a prisoner's control and may justify equitable tolling of the limitation period if it caused the petitioner to fail to meet the filing deadline. *See, e.g., Laws v. Lamarque*, 351 F.3d 919, 922–24 (9th Cir.2003) (discussing mental illness as grounds for equitable tolling and remanding the case for further development of the factual record); *Calderon v. U.S. Dist. Court (Kelly)*, 163 F.3d 530, 541 (9th Cir.1998) (en banc) (finding death penalty petitioner's mental incompetency rendered him unable to assist his attorney in the preparation of his petition).

Here, Petitioner specifically claims that at the time of his arrest he was "extremely depressed and contemplating suicide."

---

**5.** Even if this petition had been filed earlier, because it was filed in the same court as Petitioner's previous petition, and he was not proceeding to the next court level, he would not have been entitled to gap tolling. *Carey*, 536 U.S. at 219–21, 122 S.Ct. 2134.

**6.** The Supreme Court in *Pace* noted that it has "never squarely addressed the question

whether equitable tolling is applicable to AEDPA's statute of limitations." *Pace*, 544 U.S. at 418 n. 8, 125 S.Ct. 1807. The Supreme Court declined to consider it in that case and assumed for the sake of argument that it did, because the respondent assumed as much, and the petitioner was not entitled to tolling under any standard. *Id.*

(Opp'n at 3.) These claims and accompanying records (*see* Opp'n Ex. B) serve only to show a history of depression, and do not provide evidence supporting an inability to file his federal habeas Petition within the limitation period.

Petitioner also provides prison medical records from December 2003 through September 2004 showing that he had been on various medications for depression and sometimes experienced auditory hallucinations ("A/H"). (Opp'n at 3–4, Ex. A.) On September 4, 2004, he apparently attempted suicide by tying some bedsheets loosely around his neck because demons told him to do so. (Opp'n at 5, Ex. A at 18–22, 24–41.) Treatment records on that date, however, show that his thoughts were "well-organized" and that he did not display behavioral evidence of psychotic symptoms. (Opp'n Ex. A at 45.) A physical examination on September 5, 2004, showed he had "normal flexion and extension of his neck and there are no abrasions or lesions on his neck." (Opp'n Ex. A at 30.) The treatment records indicate this "suicide" attempt was considered manipulative as well as "appropriate."[7] (Opp'n Ex. A at 19, 26, 28.) He was hospitalized for observation on September 4, 2004, and discharged on September 8, 2004. (Opp'n Ex. A at 18–22, 24–41.) On that latter date he was described as "stabilized" and reported that he was "ready to go to yard" and stated "I'm not suicidal." (Opp'n Ex. A at 33, 41.) No psychotic signs were noted on that date. He was discharged with a diagnosis of psychotic, single episode. (Opp'n Ex. A at 37.)

Other records indicate intermittent mental health treatment on an outpatient basis. On February 20, 2004, he reported having experienced auditory hallucinations. (Opp'n Ex. A at 17.) It is unclear from the notes whether these reported hallucinations were current or simply sometime within the past two years. (*Id.* ("Geodon seems to have alleviated A/H (command hallucinations—'tell me to kill myself, hurt people'—tried 'carbon monoxide poisoning ... severe depression & problems [with] my relationship & using a lot of drugs, drinking a lot ... 2 yrs ago' ")).) Other treatment notes indicate that he was "stable" (June 23, 2004), and had "normal mental status," but was "reporting forceful A/H" on July 23,2004. (Opp'n Ex. A at 45.)

These records do not establish that Petitioner's alleged mental illness made it impossible for him to file his federal habeas petition on time. Assuming for this analysis that Petitioner suffered from these disorders since the time of his sentencing, he has failed to provide specific facts showing how the condition caused the 210–day delay between November 18, 2003, when the limitation period began to run, and June 15, 2004, when he filed his first habeas petition in the superior court; or the 339–day delay from the denial of that petition on June 24, 2004, to the filing of the next on May 29, 2005; or the additional 274–day delay after the supreme court denied his petitions on July 19, 2006, to the filing of the Petition herein, on April 19, 2007.

Moreover, despite his alleged disorders, Petitioner managed to file his first state habeas petition on June 15, 2004, 189 days after the limitation period started to run. Likewise, after he filed his second superior court petition, he managed to quickly file his subsequent state petitions. There is no indication that his mental disorders in any way impacted his ability to bring those petitions. *See, e.g., Gaston v. Palmer,* 417 F.3d 1030, 1034–35 (9th Cir.2005) (suggesting that a petitioner who was physically and mentally able to file a petition in one

---

**7.** The Court interprets this to mean that the behavior was not entirely manipulative and

that his depression played some part in his actions.

court, without allegations that his physical or mental condition worsened, would be deemed just as capable of filing a petition in federal court), *amended on other grounds by Gaston v. Palmer,* 447 F.3d 1165 (9th Cir.2006).

Even assuming, without deciding, that Petitioner is entitled to equitable tolling because a mental illness prevented him from filing his Petition from the day the statute began to run until June 15, 2004, when he filed his first state court petition, and again from June 24, 2004, the day the superior court denied his petition, until September 8, 2004, when he was discharged as "stable" after his psychotic episode,[8] the Petition still would not be timely.

After September 8, 2004, the next petition he filed was on May 29, 2005–263 days later. Under the assumptions made for purposes of this analysis, he would be entitled to tolling while that petition was pending and during the gaps and pendency of the rest of his state court petitions, through the California Supreme Court denial on July 19, 2006. After July 19, 2006, however, he waited another 274 days to file the instant Petition. There is no evidence of either due diligence or extraordinary circumstances preventing him from filing his Petition during this time period. Therefore, even with this most generous of assumptions, a total of 537 days elapsed for which equitable tolling is not justified.[9]

The evidence before the Court does not satisfy the test for equitable tolling as it does not show that Petitioner's alleged mental disability was an extraordinary circumstance which prevented him from filing

his Petition before the limitation period expired. *Laws,* 351 F.3d at 922–24; *Gaston,* 417 F.3d at 1034–35. Nor were there any other extraordinary circumstances with accompanying due diligence alleged that would account for Petitioner's delays. *Pace,* 544 U.S. at 416–17, 125 S.Ct. 1807.

Accordingly, the Court finds that even assuming Petitioner is entitled to the statutory or equitable tolling as discussed above, this Petition—filed a minimum of 537 days after the statute began to run—is late by 172 days, and, therefore, is time-barred.

## IV. RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

---

**8.** Again, the Court notes that Petitioner has not provided evidence to substantiate this assumption; this is only the best-case-scenario under the evidence presented.

**9.** Specifically, the 537 days is determined by the Court's best-case-scenario assumptions of

statutory and equitable tolling through September 8, 2004, then 263 days untolled to the May 29, 2005, filing in the superior court, plus the 274 days untolled from the supreme court denial of that petition to the filing of the Petition herein on April 19, 2007.