**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-11669

_____

LUIS RALPHY TORRES,

*Petitioner-Appellant,*

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

*Respondents-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cv-01337-MMH-JBT

_____

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

Congress designed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to promote efficiency in the federal habeas appeals process. Towards that end, it codified an exhaustion

requirement that demands petitioners exhaust one complete turn of appeals in their state's courts. And it created a one-year statute of limitations that requires petitioners to bring their federal habeas claims within one year of the conclusion of state proceedings.

But once in a while, state-court proceedings create uncertainty about when the state appeals process ends and the running of AEDPA's statute of limitations begins. When that happens, navigating AEDPA can be like walking a narrow ridge for a habeas petitioner. He faces AEDPA's exhaustion dismissal cliff on one side if he files too early and its statute-of-limitations dismissal cliff on the other if he files too late.

That's the position Petitioner Luis Ralphy Torres found himself in. Torres is an inmate in the Florida state prison system. Torres sought a writ of habeas corpus, and the district court denied it, finding that his petition was untimely under the AEDPA statute of limitations.

As the district court saw things, Torres's sentence became final after he lost his direct appeal in Florida's First District Court of Appeal ("First DCA"). In the court's view, it made no difference that the Florida Supreme Court issued a sua sponte stay in his case pending its resolution of another person's case involving the constitutionality of the same statute Torres was convicted of violating. That was so, the district court reasoned, because ultimately, the

Florida Supreme Court dismissed Torres's case for lack of jurisdiction.

After careful review of the record and the parties' briefs, we reverse the district court's determination. We conclude that the Florida Supreme Court's sua sponte stay affected the finality of Torres's judgment. For purposes of AEDPA's statute of limitations, Torres's case became final only after the U.S. Supreme Court denied his petition seeking a writ of certiorari from the Florida Supreme Court's dismissal of his direct appeal. Proceedings in the U.S. Supreme Court on Torres's direct appeal and state post-conviction proceedings tolled the statute of limitations until Torres filed his habeas petition in federal district court in November 2018.

United States Supreme Court precedent compels this answer. The Court has interpreted AEDPA to encourage petitioners to exhaust the normal course of the appeals process in state court before filing a petition for a writ of certiorari. To be sure, the Supreme Court has recognized that tension can arise between AEDPA's statute-of-limitations provision and the procedural exhaustion requirement—just as it did in Torres's case. But the Court has repeatedly resolved that tension to avoid placing petitioners in a procedural quagmire, caught between AEDPA's exhaustion and statute-of-limitations abysses.

True, in general, a habeas petitioner in Florida in a non-capital case need not appeal to the Florida Supreme Court to exhaust state remedies. But in the unique circumstances of this case, it was reasonable for Torres to believe that the exhaustion requirement

demanded he appeal to the Florida Supreme Court before petitioning the U.S. Supreme Court. As a result, the statute of limitations was tolled until the Supreme Court dismissed his petition for certiorari—even though the court ultimately determined itself to lack jurisdiction over Torres's appeal. So Torres's petition was timely.

We therefore vacate the district court's judgment dismissing Torres's petition and remand to the district court to consider the petition in the first instance.

## I.    BACKGROUND

Because the resolution of this case turns on timing, we recount in detail each relevant step in the chronology of this case.

On June 11, 2010, a Florida jury found Torres guilty of one count of trafficking oxycodone, in violation of Florida Statute § 893.135(1)(c). The state trial court sentenced Torres to a thirty-year term of imprisonment, with a twenty-five-year mandatory minimum.

Torres appealed. On December 8, 2011, the First DCA affirmed the conviction without issuing a written opinion.

*A. The Florida Supreme Court issued a sua sponte stay in Torres's direct appeal.*

But that was not the end of Torres's direct appeal. Rather, in the First DCA, Torres moved for the court to "clarify its decision by issuing a written opinion" with "a citation to *Flagg v. State*[.]" In his motion, Torres explained, "Currently the issue of the constitutionality of the statute is before the Florida Supreme Court.

Therefor[e], the appellant requests the court to clarify its decision by issuing a written opinion consisting of a citation to *Flagg v. State*, 36 Fla. Law Weekly D2276 (Fla. 1st DCA, Oct, 13, 2011), so that this issue will be preserved for further review."

*Flagg v. State* had upheld the constitutionality of the statute under which Torres was convicted, Florida Statute § 893.01 *et seq* ("§ 893"). In response to Torres's request, the First DCA withdrew its opinion in Torres's case and reissued the opinion with a citation to *Flagg*. The re-issued opinion read, in relevant part, "AFFIRMED. *See Flagg v. State*, 74 So. 3d 138 (Fla. 1st DCA 2011)."

Meanwhile, another case involving the constitutionality of § 893 was working its way through the Florida state court system. On October 12, 2011, the Florida Supreme Court accepted jurisdiction in *State v. Adkins,* 71 So. 3d 117 (Fla. 2011), to review the constitutionality of the statute under which Torres was convicted. *Adkins* specifically reviewed the decision of a trial court that had granted a motion to dismiss on the basis that § 893 was unconstitutional.[1]

On March 12, 2012, Torres timely filed a "Notice to Invoke Discretionary Jurisdiction [of the Florida Supreme Court]." He

---

[1] The Court in *Flagg* noted, "We recognize that the Second District recently certified the constitutional issue raised in this case to the Florida Supreme Court for immediate resolution pursuant to Florida Rule of Appellate Procedure 9.125. *See State v. Adkins,* 71 So.3d 184 (Fla. 2d DCA 2011). Although we agree that the uncertainty caused by *Shelton* is affecting the administration of justice around the state and that an expeditious decision from the supreme court addressing the constitutionality of section

asserted that the court could exercise jurisdiction over his case because the February 14, 2012, First DCA opinion in his case cited a case that had "found a state statute constitutional." In the letter, Torres also pointed to *State v. Adkins*. *Adkins* was another case about the constitutionality of the same statute, and it remained pending after the Florida Supreme Court had heard argument on it.

The next day, on March 13, 2012, the Florida Supreme Court filed an "Acknowledgment of New Case" form indicating that it had received Torres's notice to invoke discretionary jurisdiction and assigned a case number to Torres's appeal. Three days later, the Florida Supreme Court entered a sua sponte order in Torres's appeal. The order stayed "[t]he proceedings in th[at] Court in [Torres's] case . . . pending disposition of *State v. Adkins*, Case No. SC11-1878, which [wa]s [also] pending in th[at] court."

Four months passed, and on July 12, 2012, the Florida Supreme Court issued its opinion in *Adkins*, upholding § 893 as facially constitutional. *See State v. Adkins*, 96 So. 3d 412, 423 (Fla. 2012). In October of the same year, the Florida Supreme Court declined to exercise discretionary jurisdiction over Flagg. *See Flagg v. State*, 104 So. 3d 1083 (Fla. 2012) (unpublished). So on November

---

893.13 is needed, we do not see any reason not to reaffirm our view that the statute is constitutional." 74 So. 3d at 141.

9, 2012, the Florida Supreme Court dismissed Torres's direct appeal.

Within the 90-day period, on February 4, 2013, Torres filed a consolidated petition for a writ of certiorari in the U.S. Supreme Court. The U.S. Supreme Court denied the certiorari petition on April 15, 2013.

Within four months, on August 9, 2013, Torres filed a *pro se* motion under Florida Rule of Criminal Procedure 3.850 for postconviction relief in the Circuit Court of the Fourth Judicial Circuit of Duval County. That court denied Torres's motion on February 8, 2018. Torres timely appealed that decision to the First DCA. But the First DCA denied his appeal on September 12, 2018.

### B. *The federal district court found Torres's petition untimely under AEDPA.*

Less than two months went by before Torres, on November 8, 2018, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. The State of Florida moved to dismiss the petition as untimely. In Florida's view, because *Flagg* was never pending in the Florida State Supreme Court, the Supreme Court could not have asserted jurisdiction over Torres's case. So, Florida argued, the First DCA was the state court of last resort, for purposes of the AEDPA statute of limitations. Florida urged that Torres's conviction became final for purposes of federal habeas on May 14, 2012, when 90 days expired from the Florida First DCA's February 14, 2012, judgment on direct appeal without Torres having sought certiorari in the U.S. Supreme Court. Or in date-certain

terms, Florida contended, the one-year deadline for filing a petition for a writ of habeas corpus in federal district court expired on May 14, 2013.

For his part, Torres argued that his petition was timely. He noted that he timely filed the notice of intent to invoke the jurisdiction of the Florida Supreme Court, and that court both entered an "Acknowledgment of New Case" and stayed his case pending the disposition of *Adkins*. Torres asserted that these documents were proof that he had "properly filed" his case in the Florida Supreme Court, satisfying AEDPA's filing requirement.

Under this scenario, Torres's direct appeal would have concluded on November 9, 2012, when the Florida Supreme Court declined his motion to invoke its jurisdiction. Then, his deadline to file a petition for a writ of certiorari in the U.S. Supreme Court would have been February 7, 2013. Torres filed his cert petition three days before that—on February 4, 2013. And the Supreme Court denied his petition on April 15, 2013, which is the date that Torres's judgment would have become final.

Torres then filed a Rule 3.850 motion for post-conviction relief on August 5, 2013, which—under this scenario—tolled the AEDPA statute of limitations after 112 days had passed. The state courts ultimately denied the Rule 3.850 motion on September 12, 2018, causing the AEDPA statute of limitations to begin to run again. But when Torres filed his petition for a writ of habeas corpus in the federal district court on November 8, 2018, a total of only 169 untolled days had passed, if Torres's direct-appeal judgment did

not become final until April 13, 2013. Under that view of the evidence, the statute of limitations would not have run, and his habeas petition would have been timely.

After considering the parties' arguments, the district court dismissed the petition as untimely. It concluded that Torres's judgment became final on May 14, 2012, when the 90 days ran from the First DCA's judgment on direct appeal and Torres hadn't sought certiorari from the U.S. Supreme Court. Then, because it found no tolling occurred between May 14, 2012, and the next year, the court determined that AEDPA's statute of limitations had expired on May 14, 2013. As a result, the district court dismissed Torres's petition and denied his request for a certificate of appealability.

### C. Proceedings on Appeal

This Court vacated the district court's order and remanded the case to the district court with instructions to consider "the impact of the sua sponte stay on the finality of Torres's direct appeal under § 2244(d)(1)(A) without reference to the 'properly filed' and 'tolling' language in § 2244(b)(2)." Specifically, we instructed the district court to "look to the actions taken by the state court and the relevant state law to determine whether the entirety of the state direct appellate process has concluded."

On remand, the district court again concluded that the statute of limitations had expired on May 14, 2013. It reasoned that "[b]ecause the Florida Supreme Court did not have jurisdiction over Torres's notice, his judgment and sentence became final on May 14, 2012, ninety days after the First DCA's February 14, 2012,

opinion." But, the court decided to grant a certificate of appealability on the following issue: "whether the sua sponte stay impacted the finality of Torres's direct appeal under 28 U.S.C. § 2244(d)(1)(A), which permits the filing of a federal petition within one year from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'"

Torres timely appealed the district court's timeliness order. Now, we must decide whether Florida and the district court's view of the proceedings is correct or whether instead Torres's is.

## II.    STANDARD OF REVIEW

We review de novo the dismissal of a federal habeas petition as time-barred under 28 U.S.C. § 2244(d). *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1155 (11th Cir. 2014).

## III.    DISCUSSION

To explain our resolution of this case, we first review the principles of AEDPA's statute of limitations. Then we discuss AEDPA's exhaustion requirement. Third, we summarize the purposes of AEDPA. Finally, we apply these concepts to the facts here to show why Torres's habeas petition was timely.

*A. AEDPA's statute of limitations, exhaustion requirement, and goals encourage petitioners to pursue state remedies to their fullest extent.*

1.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1)(A), establishes a one-year statute of

limitations for state prisoners to apply for a writ of habeas corpus. Under AEDPA, that period runs "from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review." *Id.*

Based on AEDPA's statute of limitations, we must consider how we determine when "judgment became final by the conclusion of direct review or the expiration of time for seeking such review." *Id.* Under Supreme Court Rule 13.1, a state prisoner seeking habeas relief has 90 days from the date of the judgment of the state "court of last resort" to file a petition for a writ of certiorari (also known as a "cert petition") in the U.S. Supreme Court. *See Bond v. Moore*, 309 F.3d 770, 773 n.3 (11th Cir. 2002) (quoting Sᴜᴘ. Cᴛ. R. 13.1). So for purposes of AEDPA, we generally consider a state prisoner's sentence final once the deadline to petition the Supreme Court has passed, meaning either 90 days after the entry of judgment of the state court of last resort (in the event the prisoner does not file a cert petition) or after the Supreme Court denies the cert petition. *See id.* at 774.

Once AEDPA's one-year statute of limitations begins to run, collateral state-court proceedings, while pending, can toll the limitations period if they result from "a properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2).

2. Exhaustion Requirement

At the same time, the Supreme Court has concluded, AEDPA also imposes an exhaustion requirement on federal habeas

petitioners.  Indeed, the Court has explained, direct review under AEDPA does not conclude "until the availability of direct appeal to the state courts and to [the Supreme] Court has been exhausted." *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (quotations and citations omitted).

To satisfy this exhaustion requirement, petitioners must give "state courts the first opportunity to review the claim and to correct any constitutional violation in the first instance." *Id.* (quoting *Carey v. Saffold,* 536 U.S. 214, 220 (2002) (internal quotations omitted).  That is, the exhaustion requirement forces a petitioner to seek all possible normally available relief in state courts.  AEDPA "makes clear that a federal petitioner has not exhausted [State] remedies as long as he maintains 'the right under the law of the State to raise' in that State, 'by any available procedure, the question presented.'" *Carey*, 536 U.S. at 220 (quoting 28 U.S.C. § 2254(c)).  The Supreme Court has interpreted this provision to "require the federal habeas petitioner to invoke one complete round of the State's established appellate review process." *Id.* (citation omitted).

Still, we've held that, because of the Florida Supreme Court's limited grant of jurisdiction, a prisoner generally need not appeal to the Florida Supreme Court to satisfy exhaustion.  In *Lee v. Wainright*, 468 F.2d 809, 810 (5th Cir. 1972),[2] our predecessor Court held that "[u]nless there are unusual circumstances . . . , such

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981).

as conflict with the decision of another District Court of Appeal, there is no exhaustion requirement of application to the Florida Supreme Court for certiorari."

We've applied this rule in more recent Eleventh Circuit cases. For example, in *Green v. Secretary, Department of Corrections*, 28 F.4th 1089, 1128 n.9 (11th Cir. 2022), we noted that in a Florida "non-capital case, . . . exhaustion is complete when the Florida District Court of Appeal decides the claim on the merits." *See also Barritt v. Sec'y, Fla. Dep't of Corrs.*, 968 F.3d 1246, 1249 n.3 (11th Cir. 2020) ("Under Florida law, claims for postconviction relief are exhausted once they are appealed to the state district court of appeal. They need not be appealed to the Florida Supreme Court in order to be considered exhausted for federal habeas purposes." (citing *Lee*, 468 F.2d at 810)).

### 3. Purposes of AEDPA

The Supreme Court has explained that courts must consider the purposes for which AEDPA was passed when they interpret it. *See Panetti v. Quarterman*, 551 U.S. 930, 945–46 (2007). These include furthering "the principles of comity, finality, and federalism" and promoting "judicial efficiency and conservation of judicial resources." *Id.* (internal quotations and citations omitted). Based on these purposes, we interpret AEDPA in a way that strikes a balance between encouraging petitioners to pursue the full extent of state

remedies and streamlining the process overall. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001).

B. *Because of the sua sponte stay, Torres's appeal was not final until the Florida Supreme Court dismissed his case.*

With these concepts in mind, we consider whether Torres timely filed his federal habeas petition. That question requires us to first resolve two sub-issues: first, whether the Florida Supreme Court had jurisdiction when it issued the sua sponte stay, and second, whether the sua sponte stay affected the finality of Torres's appeal.

1.  When the Florida Supreme Court issued its sua sponte stay, it had jurisdiction to determine its own jurisdiction.

We begin by addressing whether the Florida Supreme Court enjoyed jurisdiction over Torres's appeal when it issued its sua sponte stay of the proceedings in that case. This matters because if the Florida Supreme Court lacked jurisdiction to issue the sua sponte stay, then that court's issuance of the stay could not have tolled AEDPA's statute of limitations.

Article V, §§ 3(b)(3) and 3(b)(4) of the Florida Constitution, provide six possible bases for the Florida Supreme Court's jurisdiction over decisions of the state courts of appeal:

The Supreme Court has jurisdiction over decisions that (1) expressly declare a state statute valid; (2) expressly construe a provision of the state or federal constitution; (3) expressly affect a class of constitutional officers; (4) expressly and directly conflict with a

decision of another district court of appeal or of the supreme court on the same question of law; (5) pass on a question certified to be of great public importance; or (6) are certified to be in direct conflict with a decision of another district court of appeal.

None of the bases of Florida Supreme Court jurisdiction that Article V, § 3 expressly sets forth provide that court with jurisdiction over Torres's case. In the present case, neither the first, second, third, fifth, or sixth basis for jurisdiction applies.

The fourth possible basis of jurisdiction—express conflict jurisdiction—was technically possible at one point, depending on the outcome of the Supreme Court's resolution of a different then-pending case. Ultimately, though, that basis also turned out to be unavailable. Had the court resolved *Adkins* in favor of finding § 893 *unconstitutional*, then it's possible that the Florida Supreme Court also would have accepted jurisdiction over *Flagg*. And if the Florida Supreme Court had overturned *Flagg,* then it plausibly could have accepted jurisdiction over Torres's case.

Jurisdiction was possible through this avenue even though the First DCA's opinion in Torres's case was a per curiam affirmance with only a citation to authority. That's so because of the Florida Supreme Court's ruling in *Jollie v. State*. There, the Florida Supreme Court held it can exercise express conflict jurisdiction over the opinion of a district court of appeal that is a per curiam affirmance if it cites authority that is either pending in or has been reversed by the Florida Supreme Court. *See* 405 So. 2d 418, 420 (Fla. 1981). To be pending in the Florida Supreme Court, the

Supreme Court must have accepted jurisdiction over the case; it is not enough that one of the parties filed a notice to invoke the jurisdiction of the Florida Supreme Court. *See Harrison v. Hyster Co.*, 515 So. 2d 1279 (Fla. 1987).

Although this avenue for jurisdiction existed, depending on the resolution of *Adkins*, the Florida Supreme Court ultimately could not assert express conflict jurisdiction over Torres's appeal because it declined to invoke jurisdiction over or reverse *Flagg*.

Still, the lack of an express Florida constitutional basis for the Florida Supreme Court's jurisdiction over Torres's appeal does not necessarily mean that the Florida Supreme Court's sua sponte stay of Torres's case was, as Florida encourages us to conclude, void or legally ineffective for lack of jurisdiction. That's so because a court has jurisdiction to determine the scope of its jurisdiction.

The U.S. Supreme Court has expounded on this principle in the context of federal courts. We find that discussion instructive because, like the Florida Supreme Court, federal courts are courts of limited jurisdiction.

In *United States v. United Mine Workers of America*, 330 U.S. 258, 270 (1947), for instance, the U.S. Supreme Court considered a case challenging the legitimacy of a temporary restraining order that a district court had imposed while determining whether it had jurisdiction. Under the act at issue, the Norris-LaGuardia Act, Congress had revoked jurisdiction from the federal courts to issue injunctions in certain labor disputes. *See id.* at 270–71. But the Court explained that whether the district court ultimately had jurisdiction

over the matter was irrelevant to whether the district court's restraining order was enforceable. *See id.* at 291–96. Rather, the district court "unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." *Id.* at 290.

Following this principle, we conclude that the Florida Supreme Court had jurisdiction over Torres's case when it issued the sua sponte stay. As with the temporary restraining order the court imposed in *United Mine Workers*, the Florida Supreme Court issued a valid and legally effective sua sponte stay in Torres's appeal under its jurisdiction to determine the scope of its own jurisdiction.

>  2.  The sua sponte stay affected the finality of Torres's judgment.

As we've explained, AEDPA's exhaustion requirement means a federal habeas petitioner must generally take the state appellate process as far as possible. That's so because AEDPA's statute-of-limitations rule is designed to "promote[] the exhaustion of state remedies while respecting the interest in the finality of state court judgments." *Duncan*, 533 U.S. at 178. And "[AEDPA] makes clear that a federal petitioner has not exhausted [his state] remedies as long as he maintains 'the right under the law of the State to raise' in that State, 'by any available procedure, the question presented.'" *Carey*, 536 U.S. at 220 (quoting 28 U.S.C. § 2254(c)).

AEDPA's statute-of-limitations provision is designed to promote judicial economy. But as the Supreme Court has recognized, the provision can conflict with other requirements of the statute,

including the need to exhaust state remedies. Because different states have different processes for pursuing a direct appeal, some unusual situations can make it unclear when a prisoner has pursued state remedies to the degree necessary to satisfy the AEDPA exhaustion requirement. Without certainty about when a judgment is technically final, a petitioner may have difficulty determining when the statute of limitations on the habeas petition begins to run. In cases where the Supreme Court has confronted a clash between state exhaustion requirements and AEDPA's statute of limitations, the Supreme Court has resolved issues in favor of petitioners who have pursued relief in state courts.

Consider *Carey v. Saffold*. *Carey* concerned California's proposed reading of the term "pending." California had asserted that collateral review of a state prisoner's conviction concluded after a lower court affirmed a prisoner's sentence, before the prisoner had appealed the sentence to the California Supreme Court. *See* 536 U.S. at 219. In other words, applying California law to the finality of judgments meant the AEDPA statute of limitations was running, and state proceedings were not technically "pending" between the end of proceedings in the lower state court and when the California Supreme Court had an opportunity to review the decision. *See id.*

On the basis of that rule, a federal district court rejected a state prisoner's habeas petition as untimely, even though his appeal was still moving through the state-court system. *See id.* at 218. The Ninth Circuit reversed the district court, and the Supreme Court

affirmed the Ninth Circuit's decision that California's rule was inconsistent with the principles of AEDPA.[3] *See id.* at 218–19. The Supreme Court reasoned that the prisoner's federal petition was *potentially* timely because AEDPA's statute of limitations had not begun to run while the intervening state proceedings were still ongoing. *See id.* at 220–21. In reaching this conclusion, the U.S. Supreme Court held that California's interpretation did not comport with the ordinary meaning of the term "pending." *Id.* at 219.

The Court explained that if the federal statute of limitations could expire before state proceedings concluded, that would create a "serious statutory anomaly." *Id.* at 220. Such a policy would "encourag[e] state prisoners to file federal habeas petitions *before* the State completes a full round of collateral review." *Id.* And that would not aid in judicial economy. After all, the Court reasoned, it "would lead to great uncertainty in the federal courts, requiring them to contend with habeas petitions that are in one sense unlawful (because the claims have not been exhausted) but in another sense *required* by law (because they would otherwise be barred by the 1-year statute of limitations)." *Id.*

The U.S. Supreme Court confronted a similar scenario in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). In *O'Sullivan*, the Supreme Court reviewed a decision of the Seventh Circuit overturning a district court's finding that a habeas petition was untimely. *See*

---

[3] In *Carey*, the Supreme Court remanded the case to the Ninth Circuit for further proceedings on whether the petitioner delayed "unreasonably" in seeking review in the California Supreme Court. *See id.* at 225–27.

*id*. at 842.  The district court denied the petition because the petitioner, a state prisoner, had failed to include certain claims he sought to bring in his federal petition in his petition for leave to appeal to the Illinois Supreme Court.  *See id*. at 841.  As a result, in the district court's view, he had failed to exhaust state remedies.  *See id*.  The prisoner argued that because the Illinois Supreme Court was a court of limited jurisdiction with discretion over its docket, it was not necessary for him to seek review there to exhaust state remedies.  *See id*. at 846.  After all, he asserted, the relevant Illinois Supreme Court rule provided that whether a petition would be granted presented a "matter of sound judicial discretion" and that the Supreme Court should take on appeals that concerned matters of general importance or resolved conflicts with lower courts.  *Id*. at 843 (quoting ILL. SUP. CT. R. 315).

The U.S. Supreme Court looked to the express language of AEDPA's exhaustion requirement to resolve the question.  That text provides, "[A] habeas petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, *by any available procedure*, the question presented."  *Id*. at 844 (emphasis added).  The Court reasoned that this language did not require prisoners to "invoke extraordinary remedies when those remedies are alternatives to the standard review process and where state courts have not provided relief through those remedies in the past."  *Id*.  But, the Court explained, prisoners did need to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

24-11669                Opinion of the Court                21

process." *Id.* at 845. So the Supreme Court reversed the judgment of the Seventh Circuit and held that the petitioner failed to exhaust state remedies because he had not given the Illinois Supreme Court an opportunity to review his claims. *Id.* at 849.

*Carey* and *O'Sullivan* support the conclusion that we should resolve any reasonable confusion about when AEDPA's statute of limitations begins to run in a manner that incentivizes petitioners to pursue a complete round of appellate review before filing a habeas petition in federal court. Both these precedents express concern over duplicative processes and confusion that can arise if prisoners must file habeas petitions in federal court before presenting their claims to the state supreme court.

And they support the conclusion that, under the unique circumstances here, Torres was right to pursue his claim to the fullest extent in the Florida Supreme Court, even if, as in *O'Sullivan*, he had no guarantee that the Florida Supreme Court would ultimately accept jurisdiction over his case. Because *Adkins* was pending review when he filed his notice to invoke the jurisdiction of the Florida Supreme Court, a technically available procedure could have allowed the Florida Supreme Court to resolve a constitutional issue in his case. *See* 28 U.S.C. § 2254(c).

Although Florida state prisoners generally do not need to appeal to the Florida Supreme Court to satisfy exhaustion, *see, e.g., Green*, 28 F.4th at 1128 n.9, it is not obvious that this rule applied to Torres. After all, even Florida's Supreme Court wasn't certain enough about how *Adkins* would be resolved to simply dismiss

Torres's appeal outright; rather, that court stayed Torres's case for eight months while it sorted out the underlying basis Torres had invoked for his appeal.

And the origin of our general rule that prisoners need not appeal to the Florida Supreme Court to exhaust state remedies also supports the conclusion that Torres reasonably appealed to the Florida Supreme Court here. That rule comes from *Lee v. Wainwright*, 468 F.2d at 810. There, we held that a prisoner need not exhaust remedies by appealing to the Florida Supreme Court "[u]nless there are unusual circumstances . . . , such as conflict with the decision of another District Court of Appeal[.]" *Id.*

The circumstances in Torres's case were "unusual circumstances" of the type we anticipated in *Lee*. Had *Adkins*, which was pending at the time, been resolved in Torres's favor, the Florida Supreme Court could have found that the statute under which Torres was convicted was in fact unconstitutional. Under that circumstance, the Florida Supreme Court likely would have reversed *Flagg*, giving Torres a proper basis for Florida Supreme Court jurisdiction under *Jollie*. *See* 405 So. 2d at 420. We don't expect prisoners to be able to correctly divine the outcomes of pending cases that can affect their own cases.

In fact, Torres has a strong argument that AEDPA required him to seek relief from the state Supreme Court under the circumstances. Had Torres filed his petition for a writ of certiorari in the U.S. Supreme Court, and then *Adkins* had been resolved in his favor,

the U.S. Supreme Court may have had legitimate grounds to deny his petition on the basis that he failed to exhaust state remedies.

The bottom line is that Torres had no way of knowing how *Adkins* would be resolved. And the resolution of *Adkins* was critical to the ultimate determination of the Florida Supreme Court's jurisdiction over his case. That's why the Florida Supreme Court temporarily accepted jurisdiction over Torres's case—to determine, based on its resolution of *Adkins*, whether it had jurisdiction. As a result, the Florida Supreme Court's stay of Torres's case during that time was legally effective as a continuance of state proceedings. In other words, it effectively tolled the statute of limitations under AEDPA.

3. Torres's November 2018 habeas petition was timely.

We follow the guidance of *Carey* and *O'Sullivan* in holding that Torres's sentence became final when the Florida Supreme Court dismissed Torres's case on November 9, 2012, finding a lack of jurisdiction.

As a result, the 90-day clock on Torres's deadline to file a petition for certiorari in the U.S. Supreme Court began to run on November 9, 2012, and ran out on February 7, 2013. But Torres timely filed his certiorari petition on February 4, 2013.

Then, on April 15, 2013, the Supreme Court denied Torres's petition, so Torres's judgment became final on that date. Not quite four months passed on the statute-of-limitations clock before, on August 5, 2013, Torres filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 in the Duval County

Circuit Court. This motion tolled the AEDPA statute of limitations. At that point, 112 days had passed since April 15, 2013, so 253 days remained under the statute of limitations.

State post-conviction proceedings ended on September 12, 2018, when the First DCA denied Torres's appeal of the state trial court's post-conviction ruling. Torres filed a pro se § 2254 petition for writ of habeas corpus in the U.S. district court by mailbox rule on November 8, 2018, 57 days after the denial of the Rule 3.850 motion. Adding those 57 days to the 112 days that ran off the limitations clock earlier, Torres's petition was timely, with a total of 169 untolled days passed, and 196 days remaining on the statute of limitations.

Finally, we address two cases the district court relied on to support its holding that Torres's appeal was untimely: *Beaty v. State*, 701 So. 2d 856, 857 (Fla. 1997), and *Chamblee v. Florida*, 905 F.3d 1192, 1196 (11th Cir. 2018). But we respectfully disagree that either supports that conclusion. *Beaty* is inapposite and *Chamblee* supports our approach.

*Beaty* held that the Florida Supreme Court could not assert jurisdiction over a per curiam decision affirming a conviction without a written opinion or citation. 701 So. 2d at 858. *Beaty* does not control Torres's case because the First DCA granted Torres's request to add a citation to authority to its opinion. And as we've explained, under Florida law, that created a narrow pathway for Torres to obtain review in the Florida Supreme Court. Because this narrow pathway existed, it was reasonable for Torres to believe that

he needed to proceed with an appeal to the Florida Supreme Court to exhaust his state remedies.

As for *Chamblee v. Florida*, 905 F.3d at 1193, that case concerned the question of whether a habeas petitioner's sentence was final, despite an ongoing challenge to the imposition of certain fines. Although the Florida district court of appeal had "affirmed the [petitioner's] judgment and sentence in all other respects," *id.* at 1196–97, it had reversed the trial court's imposition of certain fines. *Id.* The trial court took no action on the remand order about the fines, so the petitioner argued to us that his sentence was not technically final for purposes of AEDPA. *See id.* at 1193–94. We held that "to determine whether the 'entirety of the state direct appellate review process has been completed,' as in *Jimenez*, this Court must look to the actions taken by the state court and the relevant state law." *Id.* at 1196 (quoting *Jimenez*, 555 U.S. at 120). We concluded, "In this case, the state court treated Chamblee's judgment as final under Florida law, and, in habeas proceedings, we are bound by a state court's interpretation of its own laws and procedures." *Id.*

In other words, *Chamblee* directs us to defer to the state courts' interpretations of their own processes and procedures. And when we do that here, *Chamblee* supports our conclusion.

The actions of both the First DCA and the Florida Supreme Court reflect that they believed Torres's case was potentially subject to an appeal in the Florida Supreme Court. Otherwise, the First DCA would not have granted Torres's request for a re-issued

opinion so he could preserve an avenue for appeal. And the Florida Supreme Court wouldn't have stayed proceedings in Torres's case while it figured out what to do with *Adkins*.

Deference to the Florida courts' interpretation of state procedure requires us to conclude that state proceedings were indeed ongoing when the sua sponte stay took valid, legal effect. So we vacate the district court's decision dismissing Torres's petition as untimely and remand for consideration of the merits of Torres's habeas appeal.

4. Concluding that the sua sponte stay affected the finality of Torres's judgment comports with the principles of AEDPA.

Finally, we note that the principles underlying AEDPA require us to resolve Torres's case in this manner. Congress enacted AEDPA to reduce the burden on the court system as a whole, while preserving federalism and comity between the state and federal court systems. *See Panetti*, 551 U.S. at 931. Our resolution of Torres's case promotes comity because it encourages petitioners to

reasonably seek relief in their state-court systems before turning to the federal courts.

It also promotes efficiency and reduces the likelihood that petitioners will feel a need to file repetitive papers in parallel court systems to cover all possible bases.

## IV.    CONCLUSION

For these reasons, we vacate the decision of the district court dismissing the petition as untimely and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**